UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:15-cv-24585-UU

BRUCE JACOBS,

    Plaintiff,

v.

BANK OF AMERICA CORPORATION, *et al.*,

    Defendants.

_____/

**ORDER ON MOTION FOR RECONSIDERATION**

THIS CAUSE came before the Court upon Defendants' Motion for Reconsideration or, in the Alternative, Certification Pursuant to 28 U.S.C. § 1292(b), of the Court's Order Denying Defendants' Motion to Dismiss, D.E. 126. The Motion is fully briefed and ripe for disposition.

THE COURT has considered the Motion, the pertinent portions of the record and is otherwise fully advised in the premises. For reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

**I.**    **Background**

The facts giving rise to this action have been thoroughly discussed and detailed in the Court's Orders on Defendants' Motions to Dismiss, D.E. 73, 116. Thus, the Court does not restate the facts in this Order.

On January 4, 2017, Plaintiff filed his Second Amended Complaint, alleging the following three claims under the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA"): (1) a reverse false claim; (2) an implied certification violation; and (3) a conspiracy claim, which relies entirely on the alleged reverse false claim. D.E. 116. On January 27, 2017, Defendants

moved to dismiss the Second Amended Complaint ("SAC") in its entirety under Fed. R. Civ. P. 12(b)(6). D.E. 95.

On March 21, 2017, the Court denied Defendants' Motion to Dismiss Plaintiff's SAC. D.E. 116. In particular, the Court concluded that Plaintiff plausibly alleged: (1) a reverse false claim under the FCA by alleging (a) an obligation to pay money to the government, (b) a false record or statement, (c) the defendant's knowledge of the falsity, and (d) the materiality of the misrepresentation; (2) an implied certification violation based on Defendants fraudulently submitting new claims for FHA mortgage-insurance benefits based on foreclosures that had been obtained by relying on misleading rubber-stamped endorsements affixed to promissory notes and purported assignments of mortgages by the Mortgage Electronic Registration System, Inc. ("MERS"), without MERS owning an interest in the underlying notes; and (3) a conspiracy claim, based entirely on Plaintiff's reverse false claim. *Id.*

On April 7, 2017, Defendants filed the instant Motion, arguing that the Court should partially reconsider its March 21, 2017 Order and, in particular, its finding that Plaintiff plausibly alleged a reverse false claim under the FCA, as Plaintiff could not plausibly allege an "obligation" under the FCA. D.E. 126. In other words, Defendants ask the Court to dismiss Plaintiff's reverse false claim, but do not ask the Court to reconsider its ruling on Plaintiff's FCA claim based on a theory of implied certification.[1] In the alternative, Defendants ask the Court to certify an interlocutory appeal as to whether Plaintiff alleged an "obligation" sufficient to state a reverse false claim under the FCA.

---

[1] Defendants also do not ask the Court to dismiss Plaintiff's conspiracy claim. However, as the Court made clear in its March 21, 2017 Order, Plaintiff's conspiracy claim is based entirely on his reverse false claim. D.E. 116 p. 29. Because the Court dismisses Plaintiff's reverse false claim with prejudice, for reasons set forth below, Plaintiff's conspiracy claim is also dismissed.

## II. Discussion

### A. Motion for Reconsideration

#### a. *Legal Standard*

Although Defendants do not specifically state the rule under which they are moving for reconsideration, they rely on precedent setting forth the standard for a Federal Rule of Civil Procedure 59(e) motion for reconsideration. "A rule 59(e) motion for reconsideration of an order may only be granted on the grounds of newly discovered evidence or manifest errors of law or fact." *Porto Venezia Condominium Ass'n v. WB Ft. Lauderdale, LLC*, 926 F. Supp. 2d 1330, 1332 (S.D. Fla. 2013). There are three reasons to grant a motion for reconsideration under Rule 59(e): "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004).

A motion for reconsideration "is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory" nor is it meant to "give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000). "It is an extraordinary remedy to be employed sparingly" and requires the moving party to "present facts or law of a strongly convincing nature that would induce a court to reverse its prior decision." *Porto Venezia Condominium Ass'n*, 926 F. Supp. 2d at 1332 (internal citations and quotations omitted).

#### b. *Analysis*

Defendants ask the Court to reconsider its order on Defendants' Motion to Dismiss to correct a clear error of law or prevent manifest injustice because, according to Defendants, the

Court misunderstood case law from this and other jurisdictions in finding that Plaintiff's SAC alleged an "obligation" for purposes of a reverse false claim under the FCA. For reasons set forth below, the Court agrees with Defendants.

i. <u>Summary of Plaintiff's allegations</u>

A brief summary of Plaintiff's allegations is required to place Defendants' arguments in context. Plaintiff alleges that prior to February 2011, the Office of Inspector General within HUD (the "OIG") investigated Bank of America's foreclosure practices and, in particular, whether Bank of America, its subsidiaries and four other mortgage services affixed rubber-stamped endorsements to promissory notes. D.E. 79 ¶¶ 15, 17, 18. In February 2011, the OIG provided the U.S. Department of Justice ("DOJ") with OIG's analyses and preliminary conclusions as to whether Bank of America engaged in fraudulent foreclosure practices. *Id.* ¶ 19. As a result of these investigations, the OIG Regional Inspector issued a General Report (the "OIG Report"), which concluded that Bank of America employees "routinely signed foreclosure documents, including affidavits, certifying that they had personal knowledge of the facts when they did not," such that Bank of America "may have [been] exposed . . . to liability under the False Claims Act." D.E. 79-3 p. 6.

On March 12, 2012, DOJ instituted an enforcement action against Bank of America and its subsidiaries, bringing claims against these entities under the FCA. D.E. 79-1. Just before instituting this action—and before DOJ's FCA claims were finally adjudicated—DOJ and 49 state attorney generals announced a proposed settlement of $25 billion with Bank of America and four other mortgage services for their reported foreclosure misconduct. D.E. 79 ¶¶ 15, 18.

The parties consummated their settlement on April 4, 2012, by entering into a consent judgment with Bank of America Corp., Bank of America, N.A., BAC Home Loans Servicing,

4

L.P., Countrywide Home Loan, Inc., Countrywide Financial Corporation and Countrywide Mortgage Ventures, L.L.C. (the "Consent Judgment"). Under the Consent Judgment, Bank of America directed settlement payment of $2,382,415,075, which was partially allocated to the United States. *Id.* ¶¶ 45-46. The Consent Judgment was entered "without trial or adjudication of issue of fact or law" and was based on "potential FCA violations" which "may have exposed [Bank of America] to liability under the False Claims Act." *Id.* ¶ 46; D.E. 79-3 p. 6. In addition, the Consent Judgment states that Defendants "do[] not admit the allegations of the Complaint other than those facts deemed necessary to the jurisdiction [of the Court]." D.E. 79-2 p. 2.

Based on these facts, Plaintiff alleges a reverse false claim and, more specifically, on grounds that Defendants made false statements in violation of the FCA by signing the Consent Judgment on April 4, 2012, because Defendants never intended to abide by the requirements of the Consent Judgment but, instead, planned to continue using rubber-stamped endorsements and ineffective MERS transfers as evidence of their ownership of mortgages after entry of the Consent Judgment. D.E. 79 ¶ 50-52. In other words, by signing the Consent Judgment, Defendants made a false statement to the government that reduced their obligation to pay, as the settlement amount was less than Defendants' full exposure if they had been found to violate the FCA after adjudication of DOJ's FCA claims in the underlying enforcement action.

ii. <u>Definition of "obligation" under the FCA</u>

The FCA defines an obligation as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee based on similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3). Accordingly, "Section 3729(b)(3) identifies three characteristics of 'obligation[s]': (1) they must be 'established dut[ies]'; (2) they need not be

'fixed'; and (3) they can arise from a list of sources, including statutes and regulations." *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1037 (5th Cir. 2016); *U.S. ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11-CV-58, 2014 WL 6908856, at *16 (S.D. Ga. Dec. 8, 2014) (citing *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657 (5th Cir. 2004)). Courts have, therefore, held that the reverse false claims provision of the FCA "does not extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed . . . and which do not arise out of an economic relationship between the government and the defendant." *Mem'l Health, Inc.*, 2014 WL 6908856, at *16. In other words, the FCA requires an allegation of "an existing" and non-contingent "legal obligation to pay or transmit money or property to the government." *Id.* (citing *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1195 (10th Cir. 2006)).

While the FCA does not define the exact scope of an "obligation," there are a few principles that are consistently applied by courts in all jurisdictions. First, "[w]hether an 'obligation' exists depends entirely on what the relevant legal instrument—be it a contract, regulation, statute, or judicial order—requires a party to do." *See, e.g.*, *United States ex rel. Landis v. Tailwind Sports Corp.*, 160 F. Supp. 3d 253, 272 (D.D.C.), *reconsideration denied*, 167 F. Supp. 3d 80 (D.D.C. 2016). Accordingly, a violation of a statute that imposes a fee by its own terms, without requiring further government action, constitutes an obligation that supports a reverse false claim. *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 245-46 (3d Cir. 2016) (construing Tariff Act as imposing an obligation under the FCA, as the statute requires importers to pay a tariff immediately upon releasing an unmarked good into the stream of commerce in the United States). In contrast, a violation of a statute that authorizes a federal agency to assess a fine based on that agency's own determination of a

6

party's wrongdoing does not constitute an obligation that supports a reverse false claim, as an agency has discretion in determining whether to levy a fine. *Simoneaux*, 843 F.3d at 1039-41 (construing the Toxic Substances Control Act ("TSCA") as failing to impose an obligation under the FCA, as the duty to pay is not triggered unless the Administrator chooses, in her discretion, to impose a civil penalty).

In other words, some statutes, such as the Tariff Act, impose an obligation to pay by their terms, whereas other statutes, such as the TSCA, authorize a federal agency to assess a fine on its own. In the first instance, a violation immediately constitutes an "obligation" under the FCA. *Victaulic Co.*, 839 F.3d at 245-46. In the second instance, an "obligation" is not created until an agency decides to exercise its discretion to assess a fine. *Simoneaux*, 843 F.3d at 1039-41

There is a third category of statutes, such as the FCA and Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), which permit the government to bring suit to enforce its rights. While there is little case law directly on point, for reasons discussed at *supra* pp. 9-12, the Court concludes that unadjudicated and unproven violations of these statutes are, on their own, insufficient to constitute "obligations" for purposes of a reverse false claim. *See U.S. ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 391 (5th Cir. 2008) ("[T]he reverse false claims act does not extend to the potential or contingent obligations to pay the government"); *see also U.S. ex rel. S. Prawer & Co. v. Verrill & Dana,* 946 F. Supp. 87, 93 (D. Me. 1996) ("[Defendant] may even violate the [FCA], but until the government or private relators obtain judgment, [Defendant has] no obligation to pay or transmit money. . . Money is not 'owed' without a specific contract remedy, a judgment or an acknowledgment of indebtedness.").

### iii. Parties' arguments

The parties agree that a contingent liability is insufficient to plausibly allege a reverse false claim, but dispute whether unadjudicated violations of the FCA or FIRREA constitute an existing legal obligation to pay the U.S. Government, such that these violations could form the basis for a reverse false claim under the FCA.

In particular, Defendants argue that both the FCA and FIRREA require the United States to bring "a civil action" in federal district court, prove its case, and obtain a judicial determination of liability before an established duty to pay is created. D.E. 126 p. 7. Accordingly, "[a]n alleged violation of these statutes, without an adjudication of liability, creates nothing more than a contingent liability" and, therefore, does not create an obligation under the FCA. *Id.* In support, Defendants rely on both the text of the FCA and FIRREA, as well as Plaintiff's SAC and its exhibits, which show and allege that: (1) the OIG report concluded that Bank of America's foreclosure practices "*may have* exposed [Bank of America] to liability under the False Claims Act;" and (2) Defendants entered into the Consent Judgment to settle FCA and FIRREA claims without admitting liability and, moreover, without trial or adjudication of any issue of fact or law. *Id.* p. 8. Defendants argue that under these circumstances, Plaintiff's SAC fails to—and cannot possibly—allege a plausible obligation, as "[n]o amount of discovery can render those unadjudicated claims" into obligations under the FCA. *Id.* p. 9.

Defendants also argue that a broad interpretation of the FCA that renders alleged and unadjudicated FCA and FIRREA violations into "obligations" under the False Claims Act would permit parties to bring reverse false claims whenever there are unproven allegations of "violation[s] of any federal statute or regulation that imposes penalties." *Id.* p. 10 (quoting *Simoneaux*, 843 F.3d at 1039). "Functionally, that means the FCA permits blanket trebling of all

federal penalties, so long as the violator knowingly conceals his violation of the regulation." *Id.* According to Defendants, the Court's prior ruling would put current and future settlements by the government in jeopardy, as settlements involving allegedly fraudulent conduct, which did not "include full payment of all alleged damages and penalties," would expose the government to reverse-FCA liability. *Id.* p. 11.

Plaintiff raises two arguments in response. First, Plaintiff argues that Defendants fail to meet the standard of showing a clear error of law or manifest in justice, as required under Rule 59(e). D.E. 136 pp. 8-9. Second, Plaintiff argues that alleged violations of the FCA and FIRREA are established duties to pay the government which, while "not yet fixed," fall within the category of an established and yet-to-be fixed obligation. *Id.* p. 10. With respect to this particular case, Plaintiff argues that he has plausibly alleged an established duty that is not yet fixed because he alleges that: (1) "banks had received contractual payments on false claims for FHA mortgage-insurance benefits under HUD regulations and the National Housing Act, which gave rise to their duty to pay statutory damages and civil penalties under the FCA;" (2) "Bank of America and Countrywide Bank were both insured by the F.D.I.C., a relationship that gave rise to a duty to pay civil penalties under the FIRREA statute;" (3) Defendants decreased their FCA and FIRREA civil liability by entering into the Consent Judgment, which settled possible FCA and FIRREA claims against Defendants at a lower cost than Defendants' possible exposure, had DOJ litigated its FCA claims; and (4) Defendants knew they intended to continue engaging in fraudulent foreclosure practices when they entered into the Consent Judgment. D.E. 136 p. 11.

### iv. Analysis

In its March 21, 2017 Order, the Court noted that it "seriously doubts that Plaintiff will, ultimately, be able to prove that Defendants decreased their 'established duty' or existing

9

obligation to pay damages under the FCA and FIRREA based on his theory that each statutory violation included in the HUD OIG report was, in fact, a proven legal obligation to pay the U.S. Government." D.E. 116 p. 18, n. 3. Now, upon reconsideration, the Court agrees with Defendants and concludes that it erred in finding that unadjudicated alleged violations of the FCA or FIRREA could, even at the motion to dismiss stage, constitute an "obligation" to pay the government under the False Claims Act. *See, e.g.*, *Rogers v. United States*, No. 14-21474-CIV, 2016 WL 4805920, at *4 (S.D. Fla. Feb. 24, 2016) (granting motion for reconsideration based on misapprehension of arguments previously presented on summary judgment); *see also Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 687 (S.D. Fla. 2009), *order vacated in part on reconsideration* (May 26, 2009) (granting motion for reconsideration after "review[ing] the case law . . . [and] find[ing] that [the court's] previous Order was in error").

As an initial matter, there is no reasonable dispute that the FCA and FIRREA do not, on each statute's own terms, impose a legal obligation to pay the government immediately upon a party's violation of any provision of these statutes. 31 U.S.C. § 3731(d) ("In any action brought under section 3730, the United States shall be required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence."); 12 U.S.C. § 1833a(f) ("In a civil action to recover a civil penalty under this section, the Attorney General must establish the right to recovery by a preponderance of the evidence."). Instead, it is evident that the government (or a relator) must sue and prevail, by proving its claims by a preponderance of the evidence, to recover under either statute. 31 U.S.C. § 3731(d); 12 U.S.C. § 1833a(f).

There is also no dispute that: (1) the DOJ never determined that Defendants violated the FCA or FIRREA but, instead, concluded in the OIG Report that Defendants *may* have acted so as to expose themselves to liability under the FCA; (2) Defendants never admitted liability under

10

the FCA or FIRREA; and (3) the Consent Judgment was entered "without trial or adjudication of issue of fact or law." D.E. 79-3 p. 8; D.E. 79-3 pp. 2, 6. This is underscored by Plaintiff's own allegations and the exhibits attached to the SAC. D.E. 79 ¶ 46; D.E. 79-2; D.E. 79-3.

Accordingly, the only question is whether unadjudicated and unproven alleged violations of the FCA or FIRREA can constitute an "obligation" for purposes of a reverse false claim under the FCA. These violations do not constitute an "obligation" for two reasons.

First, the FCA clearly does not attach reverse false claim liability to contingent obligations. *See, e.g*, *Rowan Companies, Inc.*, 520 F.3d at 391 ("[T]he reverse false claims act does not extend to the potential or contingent obligations to pay the government"); *United States ex rel. Salters v. Am. Family Care, Inc.*, No. 5:10-CV-2843-LSC, 2017 WL 1384381, at *7 (N.D. Ala. Apr. 18, 2017) (same). Unadjudicated violations of the FCA and FIRREA, which require proof of violations by a preponderance of the evidence, are quintessentially contingent obligations that fall outside the scope of the reverse false claims act. 31 U.S.C. § 3731(d); 12 U.S.C. § 1833a(f); *see Verrill & Dana,* 946 F. Supp. at 93 ("[Defendant] may even violate the [FCA], but until the government or private relators obtain judgment, [Defendant has] no obligation to pay or transmit money. . . Money is not 'owed' without a specific contract remedy, a judgment or an acknowledgment of indebtedness."); *see also United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997) ("The deliberate use of the certain, indicative, past tense suggests that Congress intended the reverse false claims provision to apply only to existing legal duties to pay or deliver property. Had Congress wished to cover attempts to avoid potential fines or sanctions it would have used language appropriate to that end.").[2]

---

[2] The Court also rejects Plaintiff's argument that allegations of FCA or FIRREA violations constitute an established duty that is "not yet fixed." Courts have uniformly held that the FCA's definition of an obligation includes two separate components. First, courts must determine

11

Second, the SAC and exhibits attached thereto do not present any facts pertaining to any other legal instrument, such as "a contract, regulation, statute or judicial order," which would create an established duty for purposes of the FCA. *See Tailwind Sports Corp.*, 160 F. Supp. 3d at 272; D.E. 79. Instead, Plaintiff only alleges a reverse false claim based on Defendants decreasing "their obligations to pay damages and penalties under the FCA and FIRREA," as well as under other unidentified "state-law[s] [that imposed] obligations owed to Florida and many other states." D.E. 79 ¶ 45. This is insufficient to plausibly allege an existing legal duty or obligation, which is needed to state a reverse false claim under the FCA. *U.S. ex rel. Bain v. Ga. Gulf. Corp.,* 386 F.3d 648, 657 (5th Cir. 2004) (FCA does not extend to potential or contingent obligations to pay fines or penalties that have not been levied or assessed and which do not arise out of economic relationship between government and defendant); *Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997); *United States v. Aggarwal*, No. 6:03CV117ORL-31KRS, 2005 WL 6011259, at *7 (M.D. Fla. Feb. 10, 2005) ("Plaintiff's Amended Complaint fails to show that, at the time any such statements were made, Defendants owed any specific legal obligation to the government"); *Verrill & Dana,* 946 F. Supp. at 93.

For these reasons, Plaintiff cannot allege a plausible "obligation" and, therefore, cannot state a reverse false claim against Defendants as a matter of law.

---

whether a plaintiff alleges an "established duty," rather than potential liability, under the FCA. *United States v. Bourseau*, 531 F.3d 1159, 1169 (9th Cir. 2008); *Rowan Companies, Inc.*, 520 F.3d at 391. Second, courts may consider whether the established duty is for a fixed or yet-to-be determined (i.e., "not yet fixed") amount. *U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1201 (10th Cir. 2006). Where a plaintiff alleges an established duty for a yet-to-be determined sum, reverse false claims liability still attaches. Where, as here, a plaintiff alleges only a contingent obligation (i.e., only potential liability), there is no liability for a reverse false claim. *SEe, e.g.*, *Bourseau*, 531 F.3d at 1169; *Rowan Companies, Inc.*, 520 F.3d at 391.

B. Conspiracy Claim

Defendants do not expressly ask the Court to dismiss Plaintiff's conspiracy claim, but instead only ask for reconsideration of the Court's determination that Plaintiff plausibly alleged an "obligation" for purposes of his reverse false claim. However, in the Court's March 21, 2017 Order, she explained:

> The Court concludes that Plaintiff has plausibly alleged a conspiracy between Defendants based on signing the April 2, 2014 Consent Judgment in violation of the FCA. D.E. 79 ¶¶ 50-52; D.E. 79-2 pp. 91-94; see, e.g., Corsello, 428 F.3d at 1014.
>
> However, Plaintiff's conspiracy claim is constrained to the allegations pertaining to Plaintiff's reverse false claim—which is based entirely on signing the April 2, 2014 Consent Judgment. D.E. 79 ¶ 64. **For this reason, the Court will not permit Plaintiff to litigate a conspiracy claim against Defendants based on his theory of an implied certification FCA violation; in other words, Plaintiff's conspiracy claim attaches to his reverse false claim and not his FCA claim based on implied certification**.

D.E. 116 p. 29 (emphasis added).

The Court sees no reason to reconsider this portion of its Order. Because Plaintiff cannot state a reverse false claim as a matter of law, Plaintiff's conspiracy claim also necessary fails and is, therefore, dismissed. *See, e.g.*, *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1344 (11th Cir. 2017) ("Absent [an] underlying tort, there can be no liability for civil conspiracy."); *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990) ("In the absence of this underlying claim, the conspiracy claim under section 1983 must fail.").

C. Interlocutory Appeal

Because the Court grants Defendants' motion for reconsideration of the Court's ruling on Plaintiff's reverse false claim under the FCA, it need not address Defendants' request for an interlocutory appeal. Accordingly, it is

ORDERED AND ADJUDGED that the Motion, D.E. 126, is GRANTED IN PART and DENIED IN PART, as follows:

(1) Plaintiff's reverse false claim is DISMISSED WITH PREJUDICE.

(2) Plaintiff's conspiracy claim is DISMISSED WITH PREJUDICE.

(3) Plaintiff's False Claims Act claims based on a theory of implied certification ARE NOT dismissed.

(4) Defendants' Amended Answer and Affirmative Defenses, D.E. 149, is HEREBY DEEMED the operative Answer in this case, such that the pleadings are closed.

(5) The Motion is otherwise DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this _27th_ day of April, 2017.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record