UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:15-cv-24585-UU

BRUCE JACOBS,

    Plaintiff,

               v.

BANK OF AMERICA CORPORATION, *et al.*

    Defendants.

_____/

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND INCORPORATED MEMORANDUM OF LAW

    Bank of America Corporation and its named affiliates ("Defendants") hereby request, pursuant to Federal Rule of Civil Procedure 12(c) and Local Rule 7.1, that the Court enter judgment on the pleadings against Plaintiff's sole remaining claim, for alleged implied-certification violations of the False Claims Act ("FCA").

    The settlement agreement reached by Defendants and the United States in the National Mortgage litigation ("NMS Consent Judgment") established a two-part regime to govern the kind of foreclosure actions that were the subject of that lawsuit and that underlie the implied-certification claim asserted here: If the government's claim is premised on allegedly improper conduct that occurred before February 9, 2012, then the claim is released. If the claim is based on conduct thereafter, an enforcement action may be brought only if the enforcement procedures under the NMS Consent Judgment are first complied with. Plaintiff cannot steer his implied-certification claim between these two outcomes—the claim is either released or unexhausted, and either way, it is barred. Indeed, the judge who entered the NMS Consent Judgment recently dismissed another *qui tam* relator's FCA claim brought against another financial institution for failure to exhaust the NMS enforcement procedures. *See United States ex rel. Schneider v. J.P. Morgan Chase Bank, N.A.*, ___ F. Supp. 3d ___, 2016 WL 7408826, at *6 (D.D.C. Dec. 22, 2016), *appeal pending sub nom.*, *Schneider v. J.P. Morgan Chase Bank, N.A.*, Case No. 17-7003 (D.C. Cir.). Plaintiff's claims here are likewise barred, and Defendants should be granted judgment on the pleadings.

1

# BACKGROUND[1]

### A.     The National Mortgage Settlement

In March 2012, the United States (along with various States) filed a complaint alleging that Defendants had violated the FCA in connection with their origination and servicing of single-family residential mortgages.  Second Amended Compl. ("SAC"), ECF 79, Ex. A ("NMS Complaint"); *see* SAC ¶ 15; MTD Order at 3-4.  In April 2012, the United States and Defendants filed a consent judgment that settled the claims asserted in the NMS Complaint.  SAC, Ex. B.  Pursuant to the NMS Consent Judgment, the United States "fully and finally release[d]" Defendants "from any civil or administrative claims the United States has or may have, and from any civil or administrative remedies or penalties (expressly including punitive or exemplary damages) it may seek or impose, based on the Covered Servicing Conduct that has taken place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012 (and, for the avoidance of doubt, with respect to FHA-insured loans, whether or not a claim for mortgage insurance benefits has been or is in the future submitted), under … the False Claims Act."  NMS Consent Judgment, Ex. F at F-12-F-13; *see* NMS Consent Judgment ¶ 9.  Covered Servicing Conduct "encompasses all activities of [Defendants] … directed toward servicing," including "[d]eficiencies in": "[a]ctivities related to the executing, notarizing, transferring or recording of mortgages … [or] assignments"; "activities related to the use of any mortgage registry system, including [Mortgage Electronic Registration System, Inc. ('MERS')], and including the transferring of mortgages or assignments using MERS"; and "[o]btaining, securing, updating, transferring, or providing promissory notes or endorsements of promissory notes through allonges or otherwise."  NMS Consent Judgment, Ex. F at F-2-F-5.

The NMS Consent Judgment also established an enforcement regime for future conduct.  It set out various "Servicing Standards," which required Defendants, for example, "to ensure that 'factual assertions' … did not contain 'materially inaccurate information' that would be used to 'obtain a judgment of foreclosure [or] order of sale.'"  Omnibus Order at 19 (quoting SAC ¶ 51(a)-(p)); *see* NMS Consent Judgment, Ex. A at A-3; Omnibus Order at 4.  Thus, as the Court ruled in denying Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint here,

---

[1] For additional background, see the Court's prior orders.  Order on Mot. to Dismiss, ECF 73 at 1-8 ("MTD Order"); Omnibus Order, ECF 116 at 1-6; Order on Mot. for Reconsideration, ECF 151 at 1-5 ("Reconsideration Order").

the NMS Consent Judgment "barred" Defendants from engaging in improper conduct with respect to promissory-note endorsements or MERS assignments. Omnibus Order at 19-20; *see* SAC ¶ 51.

Most critically for purposes of this Motion, the NMS Consent Judgment provided that, in the event of a "Potential Violation" of the Servicing Standards, Defendants "shall meet and confer with the Monitoring Committee," and Defendants "shall have a right to cure any Potential Violation." NMS Consent Judgment, Ex. E at E-11. And, the NMS Consent Judgment provides that "prior to commencing any … action" to "enforce the obligations of [Defendants] and to seek remedies for an uncured Potential Violation" under the NMS Consent Judgment, "a Party must provide notice to the Monitoring Committee of its intent to" do so and the Party may proceed with the action only if the Monitoring Committee declines to bring an enforcement action. *Id.* at E-15. Finally, the NMS Consent Judgment provides that an enforcement action may be brought "solely in the U.S. District Court for the District of Columbia." *Id.* at E-14-E-15.

### B. This Litigation

On behalf of the United States, Plaintiff brought this *qui tam* action alleging that Defendants violated the FCA by "prosecut[ing] foreclosures using surrogate signed endorsements placed on original notes," by "submit[ting] false statements and testimony about the dates when endorsements were stamped," and by "us[ing] purported assignments to the … MERS … to mislead courts into believing that [Defendants] had received an assignment of a mortgage that would confer standing to foreclose." Omnibus Order at 4-5 (quotation marks omitted). Based on that alleged conduct, Plaintiff asserted three FCA claims (in a single count): 1) a reverse false claim; 2) a conspiracy claim arising out of the reverse false claim; and 3) an implied-certification claim. *Id.* at 6.

On Defendants' motion, the Court dismissed the reverse false claim and the related conspiracy claim with prejudice. Reconsideration Order at 14. The Court, however, denied Defendants' motion to dismiss the implied-certification claim, concluding that Plaintiff had "plausibly allege[d]: (1) that Defendants failed to gain good marketable title when they foreclosed; (2) that Defendants knew they were violating … HUD requirements when they conveyed title to HUD; [and] (3) that any violation was material to the FHA's decision to pay the insurance claims." Omnibus Order at 23-24 (quotation marks omitted); *see* Reconsideration Order at 2. In so doing, the Court observed that Defendants' alleged conduct—applying

3

unauthorized endorsements on promissory notes and relying on MERS to assign notes—was conduct prohibited by the Servicing Standards.  Omnibus Order at 19-20.

After these rulings, Defendants filed an Answer to the SAC, in which they asserted various affirmative defenses to the implied-certification claim, including that it has been "released, in whole or in part, as part of the National Mortgage Settlement" and that it is "barred because Plaintiff failed to exhaust the dispute resolution procedures required by the National Mortgage Settlement."  Second Amended Answer, ECF 157 at 20, 22-24.  Defendants now move for judgment on the pleadings on the basis of those two affirmative defenses.

## STANDARD

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (quotation marks omitted).  "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss."  *Carefree Lifestyles, Inc. v. Gov't Employees Ins. Co.*, 2015 WL 11233115, at *1 (S.D. Fla. Aug. 26, 2015) (Ungaro, J.).  Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" except that allegations that "are no more than conclusions[] are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Perez*, 774 F.3d at 1335; *Carefree Lifestyles*, 2015 WL 11233115, at *1-2.

## ARGUMENT

I. TO THE EXTENT THE ALLEGED UNDERLYING NOTE-ENDORSEMENT AND MERS-ASSIGNMENT CONDUCT OCCURRED *BEFORE* FEBRUARY 9, 2012, THE IMPLIED-CERTIFICATION CLAIM IS BARRED BECAUSE IT WAS RELEASED BY THE NMS CONSENT JUDGMENT

Through the NMS Consent Judgment, the United States "fully and finally release[d]" Defendants from "any" claim under the False Claims Act "based on the Covered Servicing Conduct that has taken place" before February 9, 2012.  The Court has already determined that the foreclosure-related conduct on which Plaintiff's implied-certification claim here "falls within the scope of actions barred by the Consent Judgment Servicing Standards."  Omnibus Order 19-20. The NMS Consent Judgment defined the Covered Servicing Conduct to include "[d]eficiencies in" "providing promissory notes or endorsements of promissory notes through allonges or otherwise" and in "the transferring of mortgages or assignments using MERS."

4

NMS Consent Judgment, Ex. F at F-2-F-5.  And Plaintiff's implied-certification claim is based on Defendants' alleged "reliance upon misleadingly rubber-stamped endorsements affixed to promissory notes, without any present intention of the purported signatories to adopt them (which are invalid) and … upon purported assignments of mortgages by MERS without MERS owning any interest in the underlying notes (which were ineffective)."  SAC ¶ 54; *see also, e.g.*, Omnibus Order at 2; Reconsideration Order at 2.

Given the Court's prior rulings, the only even-arguably open question regarding release to which Plaintiff may point, but ultimately to no avail, is whether the Covered Servicing Conduct on which Plaintiff's implied-certification claim is based took place before February 9, 2012.  The SAC is conspicuously short on relevant detail for the mortgages it specifically identifies.  *See* SAC ¶ 56.  Notably, however, the SAC does not allege that the application of the endorsement stamps or the supposed MERS assignments of mortgage notes took place after the close of the release period.  To the contrary, Plaintiff alleges that all three MERS assignments identified in the SAC itself took place within the release period—July 13, 2011, in the case of borrower Nygren, *see* SAC ¶ 56.I.b; April 22, 2009, in the case of borrower Williams, *see* SAC ¶ 56.II.a; SAC, Ex. BB at 18; and February 23, 2010 in the case of borrower Barnett, *see* SAC ¶ 56.I.b; SAC, Ex. EE at 18.  And it is impossible to determine the dates of such actions with respect to the other mortgages Plaintiff has identified or with respect to the indeterminate number of unidentified mortgages that Plaintiff hopes to sweep into his implied-certification claim, about which he provides no relevant details at all.  *See* SAC ¶ 56.

Plaintiff's failure to allege the dates on which the stamped endorsements and MERS assignments underlying his implied-certification claim allegedly occurred does not, however, inoculate that claim against judgment on the pleadings.  Rather, that failure is fatal, especially given: 1) the specific allegations clearly establishing that the implied-certification claim is based on the type of conduct that is covered by the release; 2) the specific allegations establishing that the date of certain underlying actions took place before the release period ended; and 3) the absence of specific factual allegations establishing that any of the other underlying actions took place after the release period.  *See Iqbal*, 556 U.S. at 678-679 (pleading must have "facial plausibility"; "legal conclusions … must be supported by factual allegations"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) (same).  But even if the SAC's lack of detail did not alone defeat Plaintiff's implied-certification claim, the claim would still fail as a matter of law.

To the extent that those actions took place before February 9, 2012, the claim is released and therefore barred, s*ee Brooklands, Inc. v. Sweeney*, 2015 WL 1930239, at *3, *5 (S.D. Fla. Apr. 28, 2015) ("Because the Release Agreement released these claims, the defendant's motion to dismiss the civil RICO claims based on general release is properly granted."), and to the extent those actions took place later, the claim is not released but is barred nonetheless by the failure to exhaust the NMS Consent Judgment's enforcement process, as discussed below.

II. **TO THE EXTENT THE ALLEGED UNDERLYING NOTE-ENDORSEMENT AND MERS-ASSIGNMENT CONDUCT OCCURRED *AFTER* FEBRUARY 8, 2012, THE IMPLIED-CERTIFICATION CLAIM IS BARRED BY THE FAILURE TO EXHAUST THE NMS CONSENT JUDGMENT'S ENFORCEMENT PROCEDURES**

Alternatively, the implied-certification claim is barred because the NMS Consent Judgment's pre-enforcement procedures have not been followed. The NMS Consent Judgment explicitly requires that "prior to commencing any enforcement action" based on a potential violation of the terms of the settlement, Defendants "shall meet and confer with the Monitoring Committee," Defendants "shall have a right to cure," and the Party to the settlement intending to bring the enforcement action "must provide notice to the Monitoring Committee of [that] intent" so that the committee may file suit first. NMS Consent Judgment, Ex. E at E-11, E-15.

These requirements apply to Plaintiff's implied-certification claim insofar as the alleged conduct on which the claim is based took place after the federal release period closed on February 8, 2012. Plaintiff's implied-certification claim is effectively an action to enforce the NMS Consent Judgment because, again as this Court ruled in denying Defendants' Motion to Dismiss, the claim is based on the very conduct that the NMS Consent Judgment "barred" Defendants from engaging in: the allegedly improper use of promissory-note endorsements and MERS assignments. Omnibus Order at 19-20; *see* SAC ¶ 51.

Yet, none of these requirements was satisfied here with respect to the alleged potential violations underlying Plaintiff's implied-certification claim. Second Amended Answer at 23-24. Plaintiff has not—and cannot—allege otherwise. The NMS Consent Judgment, therefore, precludes the United States from asserting the implied-certification claim.

That Plaintiff was not personally a party to the NMS Consent Judgment does not allow him to circumvent that bar. As a *qui tam* relator, Plaintiff "brings th[is] action *on behalf of* the federal government" and "stands in the government's shoes—in neither a better nor worse position than the government stands when it brings suit." *United States ex rel. Atkins v.*

*McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006). Plaintiff accordingly cannot be "[p]ermitt[ed] … to go forward with his complaint, when [the United States] would not [be] allow[ed] … to proceed." *Id.* Another district court—in fact, the same judge who entered and oversaw the NMS Consent Judgment—has already reached precisely this conclusion with respect to the NMS Consent Judgment's enforcement requirements as applied to a False Claims Act *qui tam* relator who brought suit based on mortgage-related conduct covered by the NMS Servicing Standards: "Because Relator stands in the position of the Federal Government in this case, he is required to have exhausted all remedies the Federal Government would have been required to exhaust [under the NMS Consent Judgment] prior to suit." *United States ex rel. Schneider* 2016 WL 7408826, at *6.

Consequently, to the extent, if any, that Plaintiff's implied-certification claim escapes the NMS Consent Judgment's release, it is barred by the failure to exhaust the NMS Consent Judgment's enforcement procedures.[2]

## CONCLUSION

The Court should conclude that Plaintiff's implied-certification claim is barred and accordingly enter final judgment disposing of Plaintiff's entire case with prejudice.

Dated: June 1, 2017

Respectfully submitted,

/s/ Christine M. Manzo
Christine M. Manzo
Florida Bar No. 0052121
cmm@lgplaw.com
LIEBLER, GONZALEZ &
PORTUONDO
44 West Flagler Street
Miami, FL 33130
Telephone: (305) 379-0400
Fax: (305) 379-9626

Matthew T. Martens (pro hac vice)
Jeannie Rhee (pro hac vice)
WILMER CUTLER PICKERING
HALE & DORR LLP

---

[2] Even if these prerequisites had been satisfied, Plaintiff's claim could not proceed in this Court; the NMS Consent Judgment permits enforcement actions "solely in the U.S. District Court for the District of Columbia." NMS Consent Judgment, Ex. E at E-14-E-15.

1875 Pennsylvania Avenue NW
Washington, DC  20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of June 2017, I electronically caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Christine M. Manzo
Christine M. Manzo