UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:15-CV-24585-UU

**UNITED STATES OF AMERICA,**
*ex rel.* **BRUCE JACOBS,**
    **Plaintiff-Relator,**

vs.

**BANK OF AMERICA CORPORATION,**
*et al.*,
    **Defendants.**
_____/

**PLAINTIFF-RELATOR'S RESPONSE IN OPPOSITION TO
"DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND
INCORPORATED MEMORANDUM OF LAW" AND INCORPORATED
MEMORANDUM OF LAW**

Plaintiff-Relator Bruce Jacobs respectfully opposes the Defendants' Motion for Judgment on the Pleadings [D.E. 169].

The Motion relies on two separate provisions of the National Mortgage Settlement Consent Judgment (the "NMS Consent Judgment") signed by Defendants. *See* EXHIBIT B to the Second Amended Complaint (the "SAC") in D.E. 79-2, which is a copy of the NMS Consent Judgment, *United States v. Bank of Am.*, No. 12-0361 (RMC) (D.D.C. April 4, 2012). These are the same two provisions of the NMS Consent Judgment cited by the Defendants in their Eighth and Ninth Affirmative Defenses, as pled in the Second Amend Answer [D.E. 157]. Neither one of them requires or justifies dismissal or judgment on the pleadings in this action.

1

**PRELIMINARY STATEMENT**

This is an action under the False Claims Act, 31 U.S.C. § 3729, et seq. The pleadings do not establish the alleged contractual defenses to the False Claims Act liabilities, as a matter of law, based upon the unambiguous language of the NMS Consent Judgment – as required for granting judgment on the pleadings under Rule 12(c) of the Fed. R. Civ. P.

"Since a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975). "Such aids include the circumstances surrounding the formation of the consent order," as well as "any technical meaning words used may have had to the parties," which also means " '… that evidence of events surrounding its negotiation and tending to explain ambiguous terms would be admissible in evidence.' " *Id.* at 238 & n.11 (citation); *see also Turner v. Orr*, 785 F.2d 1498, 1502 (11th Cir. 1986) (following *ITT Continental*, when "[t]he language of the consent judgment itself is ambiguous"). Most tellingly here, Defendants' own conduct during the history of this action strongly contradicts their current Motion's reliance on the NMS Consent Judgment. Such a course of conduct is "particularly instructive [for] determining the meaning the parties intended for a consent decree …." *Reynolds v. Ala. Dep't of Transp.*, 1998 WL 397060, *8 (M.D. Ala. May 29, 1998) (citations omitted).

On top of that – and, no less importantly – the actual text of the contractual provisions themselves also contradicts the Motion. Therefore, the Motion should be denied.

**OVERVIEW OF THE PLEADINGS**

The First Amended Complaint [the "FAC" in D.E. 9] was served upon the Defendants on September 23, 2016. *See* D.E. 33. Since that time, the Defendants vigorously litigated the alleged False Claims Act violations on the merits – without ever contending that the action represented a violation of the NMS Consent Judgment's provisions. That omission is telling, because the Relator had expressly alleged that:

> As the Defendants were negotiating the $25 Billion NMS, they began executing a new fraudulent scheme that allowed them to make false claims to the FHA, continue to prosecute existing foreclosures with improper evidence and bring new foreclosure actions around the nation with this false evidence.

FAC ¶ 82. Defendants moved to dismiss the FAC on the merits of the claim, contending that (1) the "public disclosure bar" assertedly precluded the FAC's allegations, under 31 U.S.C. § 3730(e)(4)(A); and (2) the FAC did not plead the knowing presentment of false claims or the making or using of false records, or any conspiracy to violate the False Claims Act, plausibly and with particularity, under Rules 9(b) and 12(b)(6) of the Fed. R. Civ. P.. *See* D.E. 43 at 9-19. The Court declined to resolve the public disclosure bar, but granted dismissal under Rules 9(b) and 12(b)(6), without prejudice so that Relator might choose to amend. D.E. 73 at 10-11, 17-18. Tellingly, the Defendants did not raise – and thus, the Court did not consider – any provisions of the NMS Consent Judgment as a basis for seeking dismissal of the FAC.

In the SAC [D.E. 79], Relator alleges that Defendants violated the False Claims Act by making and presenting false applications for mortgage insurance benefits, on HUD Form 27011, that expressly misrepresented "marketable title" obtained by foreclosure. *See* SAC EXHIBIT T at 4 [D.E. 79-20]. The SAC alleges (and Defendants

3

deny) that the titles related to all of the Defendants' claims for FHA mortgage insurance payments made since April 4, 2012 have been false claims, "when the mortgage foreclosures resulted from presenting endorsements purportedly signed with rubber stamps and/or assignments purportedly made by MERS."  SAC ¶ 56.  Expressly, "[t]he Defendants made these claims directly to HUD by way of either paper submission or electronic submission of form HUD-27011 as described in EXHIBIT T hereto."  SAC ¶ 56.  Furthermore, each of the claims for FHA benefits had certified implicitly that the foreclosure had complied with HUD regulations requiring conveyance to FHA of a title that was " 'good marketable title' … – when, in fact, it was not."  SAC ¶ 55.

The SAC further alleges, and the Defendants deny, that they knowingly created and used false records in connection with their claims for FHA mortgage insurance payments since April 4, 2012.  Under the False Claims Act, a violation occurs when a person or entity "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3279(a)(1)(A).  Another kind of violation occurs when a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3279(a)(1)(B).  Here, the Relator alleges that false records were made and used after April 4, 2012 by retroactively affixing endorsements upon mortgage-secured promissory notes, and by using the subsequent endorsements to create the false appearance that Bank of America had possessed lawful standing to foreclose at the time of commencing a foreclosure case – even though the endorsements were not actually affixed until much later.  *See* SAC ¶ 39.  ("Where the plaintiff contends that its standing to foreclose derives from an endorsement of the note, the plaintiff must show that the endorsement occurred *prior to*

4

the inception of the lawsuit." *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 174 (Fla. 4th DCA 2012) (emphasis added) (quoted in SAC ¶ 27).)  Separately, the Defendants' purported endorsements of promissory notes were also false records, when the endorsements were affixed by surrogates using rubber stamps of other peoples' purported signatures; and, the purported assignments of mortgages from MERS to the Defendants were also false records, because MERS did not own – and thus, it could not assign – any interest in the promissory notes.  *See* SAC ¶ 54.

EXHIBIT B to the SAC is a copy of the NMS Consent Judgment itself.  [*See* D.E. 79-2.]  Under Rule 10(c) of the Fed. R. Civ. P., the exhibit is a part of the pleading "for all purposes."  After the SAC was filed, Defendants again moved to dismiss, urging again their reliance on the public disclosure bar and arguing, again, that the allegations were implausible and not pleaded with particularity under Rules 9(b) and 12(b)(6).  [*See* D.E. 95.]  None of those arguments made any mention of the NMS Consent Judgment provisions now relied upon to support the Defendants' instant Motion seeking judgment on the pleadings under Rule 12(c) – even though, as Defendants now correctly concede, "[a] motion for judgment on the pleadings is governed by the same standard as a motion to dismiss."  *Carefree Lifestyles, Inc. v. Gov't Employees Ins. Co.*, 2015 WL 11233115, at *1 (S.D. Fla. Aug. 26, 2015) (Ungaro, J.) (quoted in D.E. 169 at 4).  The Court denied their requested dismissal.  *See* D.E. 116, *reconsideration granted in part by* D.E. 151.

**REASONS FOR DENYING THE MOTION**

Interpretation of the NMS Consent Judgment is governed by federal law.  *See Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1298 (Fed. Cir. 1986) ("It is

well settled that contracts to which the government is a party ... are normally governed by federal law, not by the law of the state where they are made or performed."). In interpreting its provisions, the Court first ascertains whether its language clearly bars the asserted claim. *See King v. Department of the Navy*, 130 F.3d 1031, 1033 (Fed. Cir. 1997). If a release is ambiguous as to its scope of coverage, the Court construes its language to effect the parties' intent at the time they executed the release. *See id*. The parties' intent is a question of fact, *see Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409, 414 (Fed. Cir. 1988), which may be established by extrinsic evidence, *see Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir. 1988) (reversing a grant of summary judgment in view of extrinsic evidence of intent). Here, there is no basis for granting judgment on the pleadings based on the Defendants' contractual affirmative defenses that they should not be held liable for violations of the False Claims Act because of the NMS Consent Judgment provisions.

### A. The "Federal Release" Does Not Bar the Relator's Claim for Relief.

All of the SAC's current allegations of false claims involve conduct that occurred after April 4, 2012 – which is after the effective release date of February 8, 2012. *See* SAC ¶ 54 ("Following the entry of the BOA NMS Consent Judgment on April 4, 2012, and continuing after the expiration of that judgment's term on October 3, 2015, the Defendants have made thousands of new affirmative false claims to FHA"). The Defendants contend, however, that "[t]o the extent Plaintiff relies on alleged Covered Servicing Conduct occurring before February 9, 2012, Plaintiff's claims have been released." D.E. 157 at pg. 22 - 23 (in the Eighth Affirmative Defense) (emphasis added). The "Federal Release"

6

is written in Exhibit F to the NMS Consent Judgment. *See* pages 223-268 of EXHIBIT B to the SAC [D.E. 79-2], which are pages F-1 to F-45 of the judgment. The Defendants' argument is mistaken, mainly because Paragraph 11(d) of the Terms and Conditions of the release carves-out – and excludes from the release – "any liability for any Covered Conduct that is not expressly released herein or in Exhibit I to the Consent Judgment." NMS Consent Judgment, Exhibit F, ¶ 11(d), at F-30 [D.E. 79-2 at 252].

The only express release cited by Defendants is the one in Paragraph 2(a): "Subject to the exceptions in Paragraph 11 (concerning excluded claims) … ," the United States released "claims … or remedies or penalties … based on the Covered Servicing Conduct that has taken place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012 (and, for the avoidance of doubt, with respect to FHA-insured loans, whether or not a claim for mortgage insurance benefits has been or is in the future submitted) …." *Id.* ¶ 2(a), at F-12 to F-13 [D.E. 79-2 at 316-17]. And here, the alleged conduct – on which the SAC bases the claims of False Claims Act liability (including the statutory treble damages remedy and civil penalties for using false records or presenting false claims) – is the misconduct of obtaining foreclosure titles after April 4, 2012 that were not "good marketable title" as certified expressly in HUD Form 27011, and which were obtained using false records of rubber-stamped endorsements and purported assignments by MERS, which the Defendants knowingly tendered to HUD-FHA when presenting claims for mortgage insurance payments. SAC ¶¶ 54-56. That claim, and those remedies and penalties, are not "based on the … [c]onduct that ha[d] taken place as of … February 8, 2012." Because the conduct alleged in the SAC occurred after the NMS Consent Judgment release date, it was not released. Furthermore, liabilities based upon that subsequent

7

conduct (after April 4, 2012) were not released – even assuming that any other "Covered Conduct" may also have occurred previously (before February 9, 2012) in the course of relevant foreclosure proceedings.  Contrary to the Motion, the Defendants were not *expressly* released from claims of liability that rely upon any post-release conduct, even if there had been earlier misconduct, too.  The text of the release does not expressly state any such thing.  At best, therefore, the release is ambiguous concerning whether such liability claims were intended to be released.  For that reason alone, the exclusion in Paragraph 11(d) defeats the Defendants' reliance upon the release, because Paragraph 11(d) carves-out "any liability … that is not expressly released."

It would be illogical if the United States agreed to vastly limit its own legal authority to proceed against a bank for outright fraud in the future, merely because previously-investigated misconduct was being released in a consent judgment. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574-575 (1984) ("it seems highly unlikely" that a city would "bargain away" important programs, and "[h]ad there been any intention" to make a significant policy change, "it is much more reasonable to believe that there would have been an express provision to that effect").  Additionally – and, regardless of the contractual language or any party's intent – the release cannot be construed or applied to reach claims of fraud against the United States under the False Claims Act that rely (either solely or just partly) upon post-release conduct, as the SAC alleges here.  The False Claims Act imposes liability for fraud.  *See Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003).  Fraud is an intentional tort.  Contracts that purport to release a party from liability for future intentional or reckless conduct are unenforceable.  *See* Restatement (Second) of Contracts, § 179(1) (1979).  Furthermore, "an

interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Id.* § 203(1). The Restatement is recognized as an appropriate source of authority in contract cases. *See Mobil Oil Exploration v. United States*, 530 U.S. 604, 608 (2000). Because consent judgments are interpreted as contracts (*see ITT Continental Baking Co.*, 420 U.S. at 238), the Defendants' reliance on the release of February 8, 2012 is insufficient to support granting judgment on the pleadings for purposes of any fraudulent conduct after April 4, 2012 as alleged in the SAC.

### B. The BOA NMS Consent Judgment Does Not Apply to the SAC's Claims.

The Defendants contend that "Plaintiff's claims are barred because Plaintiff failed to exhaust the dispute resolution procedures required by the National Mortgage Settlement." D.E. 157 at Ninth Affirmative Defense. What the Defendants describe as "dispute resolution procedures" were contained in the Enforcement Terms written in Exhibit E to the NMS Consent Judgment. *See* pages 191-221 of EXHIBIT B to the SAC [D.E. 79-2], which are pages E-1 to E-14 of the judgment. Only two kinds of relief could be awarded to enforce obligations under the judgment: non-monetary equitable relief (such as an injunction or "other non-monetary corrective action"), or civil penalties for "uncured Potential Violations." *Id.*, § J.3(a)-(b) at E-15 [D.E. 79-2 at 205]. Under Section E, a Potential Violation "occur[red] if the Servicer has exceeded the Threshold Error Rate set for a Metric in a given Quarter." *See* BOA NMS Consent Judgment, Exhibit E, § E.1 at E-11 [D.E. 79-2 at 201]. The "Servicer" had a right to cure any Potential Violation (*id.* at § E.2), and the terms also generally required "good faith efforts" by the Servicer, the

9

appointed Monitor, and a Monitoring Committee to reach agreement on the resolution of any dispute (*id.* at § G).

The Defendants' Motion is mistaken here, because the SAC does not allege that Defendants exceeded any threshold error rates under the Enforcement Terms. Neither does the SAC seek to enforce any other obligation under the consent judgment. Those obligations have all expired – together with the Enforcement Terms, too – on October 3, 2015, under the express "Sunset" provision of the judgment itself. *See* NMS Consent Judgment, Exhibit E at § K, page E-16 [D.E. 79-2 at 206] ("This Consent Judgment and all Exhibits shall retain full force and effect for three and one-half years from the date it is entered … , unless otherwise specified in the Exhibit."). Nothing in Exhibit E specifies that Exhibit E remains in force beyond the sunset date. Therefore, any force or effect of Exhibit E (including all the dispute resolution terms) had expired, well before the Relator commenced this action on December 14, 2015 [*see* D.E. 1].

Even before those obligations (including the Enforcement Terms) had expired, allegations like the ones in the SAC would not have fallen with the scope of the NMS Consent Judgment. The Government persuasively demonstrates that Relator's case is not subject to the pre-enforcement requirements imposed by the NMS Consent Judgment for an action seeking compliance with its terms, precisely because the SAC is not an enforcement action under the consent judgment. *See* D.E. 176.

> The National Mortgage Settlement … provided a process for notice and cure in the event a bank failed to satisfy a Servicing Standard. If Monitor Smith determined that a bank had exceeded the "negotiated threshold error rate assigned to [any] Metric," he would notify that bank and trigger a corrective procedure. *United States v. Bank of America*, 78 F.Supp.3d 520, 528 (D.D.C. 2015); *see also* Consent Judgment, Ex. E at E–11 – E–12. "The [bank] ha[d] a right to cure a Potential Violation within a set cure period."

10

*Id*. If the bank cured the errors then "no Party to the Consent Judgment can sue on the Potential Violation." *Id*.

*United States ex rel. Schneider v. J.P. Morgan Chase Bank, N.A*., ___ F. Supp. 3d ___, ____, 2016 WL 7408826, at *3 (D.D.C. Dec. 22, 2016)*, appeal pending,* Case No. 17-7003 (D.C. Cir.). The SAC does not seek to enforce obligations under that judgment, because the SAC does not allege that Defendants exceeded any threshold error rates pertaining to servicing standards (which is the only kind of violation of the consent judgment for which monetary relief was allowed). Nor does the SAC seek to enforce any other obligation under the consent judgment.

Even before they expired, the consent judgment's obligations did not prohibit making false claims to the Government. Rather, the False Claims Act itself prohibits such conduct, *see* 31 U.S.C. § 3729(a), and the SAC seeks to obtain recovery for the Government because of such conduct by these Defendants. Thus, the Government is correct [D.E. 176], and the Defendants are incorrect [D.E. 169] in contending otherwise.

**C. Defendants' Own Conduct of the Litigation Contradicts Their Motion.**

Defendants' own conduct during the history of this action strongly contradicts their current Motion's reliance on the NMS Consent Judgment. *See* Restatement (Second) of Contracts § 202(5) (1979) ("Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with ... any relevant course of performance ...."). Despite clear opportunities earlier, the Defendants never raised any asserted breach of the Federal Release or the expired Enforcement Terms until after the ruling [D.E. 116] that denied their motion to dismiss the SAC on March 21, 2017. Defendants did not assert any breach of a single NMS Consent

Judgment provision, until filing the Amended Answer of April 25, 2017.  *See* D.E. 149 at 18 (what was then the Seventh Affirmative Defense).

Thus, the Defendants' own conduct, in not having asserted any breach, effectively shows their own understanding that this action does not violate the Federal Release or the expired Enforcement Terms.  Indeed, if the SAC *did* seek to enforce the NMS Consent Judgment (it ***does not***), and if pursuing the SAC therefore did violate any dispute resolution provisions in the Enforcement Terms (it does not), then venue would not have been proper here in this District to begin with – because, the SAC and the earlier FAC both raise essentially the same allegations of fraud (albeit, which the SAC pleads with particularity), and because "obligations under this Consent Judgment shall be enforceable solely in … the District of Columbia."  NMS Consent Judgment, Exhibit E, § J.2 at E-14 to E-15 [D.E. 79-2 at 204-05].  *Cf. Schneider*, ___ F. Supp. 3d at ___, 2016 WL 7408826, at *5 ("Mr. Schneider filed his initial Complaint … in the United States District Court for the District of South Carolina. … The case was transferred to this Court …..").  Defendants have not objected to venue in this District, nor did they request a transfer to the District of Columbia district court that possessed sole authority over any purported breach of obligations under the NMS Consent Judgment.

## **CONCLUSION**

For the foregoing reasons, Plaintiff-Relator Jacobs respectfully requests that this Honorable Court DENY the current Motion for Judgment on the Pleadings [D.E. 169].

Date: June 15, 2017                    Respectfully submitted,
                                                            /s/  *Court E. Keeley*
                                                            Court E. Keeley, B.C.S.
                                                            **Jacobs Keeley, P.L.L.C.**
                                                            Alfred I. DuPont Building
                                                            169 East Flagler St., Suite 1620
                                                            Miami, FL 33131
                                                            Keeley@JAKElegal.com
                                                            Efile@JAKElegal.com
                                                            Tel:   (305) 358-7991
                                                           Fax:   (305) 358-7992
                                                           *Lead Counsel for Plaintiff-Relator*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of June 2017, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF. The undersigned also certifies that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                                           /s/  *Court E. Keeley*
                                                                           Court E. Keeley, B.C.S.

**SERVICE LIST**
*United States of America, ex rel., Bruce Jacobs vs. Bank of America Corporation, et.al.*
Case No. 1:15-CV-24585-UU
United States District Court, Southern District of Florida

| | |
|---|---|
| **Jacobs Keeley, P.L.L.C.**<br>Court E. Keeley, B.C.S.<br>Alfred I. DuPont Building<br>169 East Flagler St., Suite 1620<br>Miami, FL 33131<br>Keeley@JAKElegal.com<br>Efile@JAKElegal.com<br>Tel:     (305) 358-7991<br>Fax:    (305) 358-7992<br>*Lead Counsel for Plaintiff Relator* | **Wilmer, Cutler, Pickering, Hale & Dorr, L.L.P.**<br>Mathew T. Martens, Esq. (*pro hac vice*)<br>Carl Nichols, Esq. (*pro hac vice*)<br>Rachel Murphy, Esq. (*pro hac vice*)<br>Webb Lyons, Esq. (*pro hac vice*)<br>Andrea Robinson, Esq. (*pro hac vice*)<br>1875 Pennsylvania Ave., N.W.<br>Washington, DC 20006<br>Matthew.Martens@WilmerHale.com<br>Carl.Nichols@WilmerHale.com<br>Rachel.Murphy@WilmerHale.com<br>Webb.Lyons@WilmerHale.com<br>Andrea.Robinson@WilmerHale.com<br>Tel:     (202) 663-6000<br>Fax:    (202) 663-6363<br>*Lead Counsel for Defendants* |
| **The LS Law Firm**<br>Lilly Ann Sanchez, Esq.<br>Four Seasons Tower<br>1441 Brickell Ave., Suite 1200<br>Miami, FL 33131<br>LSanchez@TheLSfirm.com<br>Tel:     (305) 503-5503<br>Fax:    (305) 503-6801<br>*Co-Counsel for Plaintiff-Relator* | **Liebler, Gonzalez & Portuondo**<br>J. Randolph Liebler, Esq.<br>Christine Manzo, Esq.<br>44 W. Flagler St., Suite 2500<br>Miami, FL 33130<br>JRL@LGPlaw.com<br>CMM@LGPlaw.com<br>Tel:     (305) 379-0400<br>Fax:    (305) 379-9626<br>*Co-Counsel for Defendants* |
| **Law Office of Benedict P. Kuehne, P.A.**<br>Benedict P. Kuehne, B.C.S.<br>100 S.E. 2nd Street, Suite 3550<br>Miami, Florida 33134-2154<br>Ben.Kuehne@KuehneLaw.com<br>Efiling@KuehneLaw.com<br>Tel:     (305) 789-5989<br>Fax:    (305) 789-5987<br>*Co-Counsel for Plaintiff-Relator* | **Office of the United States Attorney**<br>James A. Weinkle, Esq.<br>99 N.E. 4th Street, Suite 300<br>Miami, FL  33131<br>James.Weinkle@USDOJ.gov<br>Tel:     (305) 961-9290<br>Fax:    (305) 530-7139<br>*Counsel for the United States of America* |

14

| | |
|---|---|
| **Haber Slade, P.A.**<br>David B. Haber, Esq.<br>Roger Slade, Esq.<br>Jacob Epstein, Esq.<br>Rebecca Casamayor, Esq.<br>201 S. Biscayne Blvd., Suite 1205<br>Miami, Florida  33131<br>DHaber@DHaberLaw.com<br>RSlade@DHaberLaw.com<br>JEpstein@DHaberLaw.com<br>RCasamayor@DHaberLaw.com<br>Tel:     (305) 379-2400<br>Fax:    (305) 379-1106<br>*Co-Counsel for Plaintiff-Relator* | **Kohn Law Group, Inc.**<br>Robert E. Kohn, Esq. (*pro hac vice*)<br>100 Wilshire Boulevard, Suite 700<br>Santa Monica, California  90401<br>RKohn@KohnLawGroup.com<br>Tel:     (310) 917-1011<br>Fax:    (310) 917-1001<br>*Co-Counsel for Plaintiff-Relator* |
| **Rachel V. Rose – Attorney At Law, P.L.L.C.**<br>Rachel Veronica Rose, Esq. (*pro hac vice*)<br>P.O. Box 22718<br>Houston, Texas  77227-2718<br>rvrose@rvrose.com<br>Tel:     (713) 907-7442<br>*Co-Counsel for Plaintiff-Relator* | |