UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BRUCE JACOBS,                                          Case No.: 1:15-cv-24585-UU

       Plaintiff,

v.

BANK OF AMERICA CORPORATION, *et al.*

       Defendants.
_____/

**AMENDED CORRECTED INTERIM JOINT STATUS REPORT**

1. **Have all the defendants been served and answered the complaint? If not, state the reasons for the failure to do so**.

Yes, all Defendants have been served and answered the operative complaint.

2. **If this is a class action, has a motion for class certification been filed? If so, what is its status?**

This case is not a class action.

3. **If discovery is not closed, what is the parties' agreed upon plan for the completion of discovery by the deadline, including but not limited to the exchange of all relevant electronically stored information?**

*Plaintiff-Relator's Statement.*

Under the Scheduling Order for Pretrial Conference and Trial [D.E. 124], discovery closes on September 22, 2017. The parties have agreed to an ESI Plan, approved by the Court on November 4, 2016 [D.E. 52]. Judge O'Sullivan has also set deadlines for expert disclosures and reports, to be completed by September 1, 2017. *See* D.E. 163.

There is no agreed upon plan to complete non-ESI discovery as many of the Defendants' discovery responses are fundamentally evasive. Judge O'Sullivan cautioned Defendants from

1

the bench on June 29, 2017 that producing large volumes of documents does not demonstrate their compliance; rather, their compliance will be judged by whether they produce relevant information that the requests directly seek.  Judge O'Sullivan also the ordered Defendants to provide clear responses, and, if information is being withheld on the basis of any particular objection, the response must state specifically what information is being withheld on what basis – and what information is not being withheld.

Almost a month ago, on June 8, 2017, Judge O'Sullivan ordered the Defendants to "provide responses related to the 39 FHA mortgage insurance claims identified in the Second Amended Complaint including whether it was before the release date, before the foreclosure date, who used the stamp and under what authority that person used the stamp."  D.E. 173.  Defendants have admitted the "90 Day Delinquent Note Endorsement Process" involved "remediation" of notes with endorsements, but have not fully disclosed documents that would show whether "remediation" involved rubber stamps of David Spector, Laurie Meder or Michelle Sjolander.  Defendants have also not provided the documents that show the decision making process for creating this delinquent note endorsement process.

On June 15, 2017, a subpoena response by SourceHOV (formerly SOURCECORP BPS) identified detailed record keeping on this endorsement process (i.e. dates, loan numbers, and images of endorsed notes) that Sourcecorp purged at Bank of America's direction.  Although Bank of America claims it still has those Sourcecorp records, to date, Defendants have not complied with Judge O'Sullivan's order, and accordingly, Judge O'Sullivan orally on June 29, 2017 set a deadline of July 6, 2017 to comply.

Orally at the hearing on June 29, 2017, Judge O'Sullivan also ordered a deadline of July 13, 2017 for Defendants to conduct a reasonable inquiry and to provide any further interrogatory

answers and to produce any additional, non-privileged documents in response to the requests that have been served to-date by the Relator – though, not including discovery concerning the Defendants' claims for FHA benefits except relating to the 39 foreclosures identified in the SAC. Defendants' privilege log is due July 27, 2017. The parties have been ordered to confer this week concerning outstanding discovery issues. Defendants' counsel made several proposals by email on June 30, 2017 and July 3, 2017, which the parties have agreed to discuss by telephone on July 6, 2017. A telephone conference with Judge O'Sullivan is set for July 14, 2017.

On June 29, 2017, Judge O'Sullivan ruled orally from the bench that discovery is limited to the allegations concerning the 39 foreclosures pleaded as examples of false claims in the Second Amended Complaint [the "SAC," in D.E. 79] and Exhibit FF thereto. Plaintiff-Relator takes issue with that ruling, and respectfully intends to seek review. The SAC alleges at ¶56:

> 56. Upon information and belief, all of the Defendants' claims for FHA mortgage insurance payments made since April 4, 2012 have been false claims, for the foregoing reasons, when the mortgage foreclosures resulted from presenting endorsements purportedly signed with rubber stamps and/or assignments purportedly made by MERS. The Defendants made these claims directly to HUD by way of either paper submission or electronic submission of form HUD-27011 as described in EXHIBIT T hereto. The Defendants possess information sufficient to identify all such claims, but they have refused to provide any such information in response to discovery requests by Relator in this action. HUD also possesses sufficient information to identify the false claims, but to date, HUD has withheld information in responding to requests under the Freedom of Information Act, citing the privacy rights of borrowers. Through his own investigation, Relator has uncovered the following instances of such claims, which are alleged here as examples:

…

SAC ¶ 56.

Judge O'Sullivan concluded that discovery in *qui tam* actions is limited to the pleadings, and here, the complaint does not with particularity plead fraud beyond those 39 foreclosures, because Paragraph 56 of the SAC is based on information and belief. *But see, e.g.*, *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854-55 (7th Cir. 2009) (holding that a plausible inference of fraud suffced for particularity, even though the relator lacked personal knowledge of particular false claims).

*Defendants' Position.*

On June 29, 2017, Magistrate Judge O'Sullivan ruled that discovery in this matter is limited to that which is relevant and proportional to proving or disproving the alleged 39 false claims, at most, that were pleaded with the particularity Federal Rule of Civil Procedure 9(b) requires in Plaintiff's Second Amended Complaint and Exhibit FF thereto (the "39 Claims").[1] *See, e.g.*, *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006) ("The particularity requirement of Rule 9(b), if enforced, . . . will result in claims with discernable boundaries and manageable discovery limits."). To the extent Plaintiff attempted to plead additional unidentified claims "upon information and belief," the Eleventh Circuit has squarely rejected this as impermissible in the False Claims Act context. *See United States ex rel. Clausen v. Lab. Corp. of Am.*, 2 F.3d 1301, 1310 (11th Cir. 2002) (noting that when, as in False Claims

---

[1] Defendants argued that this case is limited to the four claims that the Court ruled were alleged with particularity in the Second Amended Complaint. D.E. 116 at 21. In order to "plead a [False Claims Act] presentment claim, the minimum indicia of reliability required to satisfy the particularity standard are the specific contents of actually submitted claims, such as billing numbers, dates, and amounts." *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 797 (11th Cir. 2014). The 39 Claims alleged in Exhibit FF to the Second Amended Complaint lack this required particularity.

4

Acts cases, "Rule 9(b) applies, pleadings generally cannot be based on information and belief" (internal quotation marks omitted)).

Since April 29, 2017,[2] Plaintiff has served Defendants with over 175 document requests and over 100 interrogatories (including subparts) which in substantial part Defendants believe do not even pertain to the allegations in the SAC. Magistrate Judge O'Sullivan has observed that Plaintiff's requests are "way too broad" and need to be narrowed "a whole lot." *See* 6/8/17 Tr. 43:5-6, 67:22-23. On June 30, 2017, and July 3, 2017, Defendants sent Plaintiff an email outlining their plan for responding to Plaintiff's remaining discovery requests in light of Magistrate Judge O'Sullivan ruling on June 29th. To date Defendants have not received a substantive response from Plaintiff.

In light of Magistrate Judge O'Sullivan's June 29th ruling regarding the scope of this case, Defendants believe that document discovery is very nearly complete. In particular, with respect to the 39 Claims, by tomorrow Defendants will have produced documents (totaling over 120,000 pages) pertaining to the full history of the loans, including (to the extent available) copies of: (1) the promissory note; (2) corporate resolutions, powers of attorney, and authorizations relating the endorsements on the promissory notes; (3) the MERS assignment of mortgage; (4) corporate resolutions, powers of attorney, and authorizations relating to the MERS

---

[2] Plaintiff began serving discovery requests associated with the Second Amended Complaint ("SAC") on January 13, 2017, one day after the SAC was unsealed. Defendants timely served their responses, including objections, on February 13, 2017. On February 16, 2017, Defendants' counsel exchanged emails with Plaintiff's counsel, inviting him to meet and confer regarding the objections. Plaintiff's counsel declined the invitation, stating that he was not ready to do so. More than a month later, after this Court ruled on Defendants' motion to dismiss, Plaintiff finally asked to meet and confer, and the parties did so on April 5, 2017. Despite the fact that the deadline under the Local Rules to move to compel responses to the January 2017 discovery requests had long since passed, Defendants agreed to provide Plaintiff with certain categories of documents, and those documents have been produced. Several more weeks passed until Plaintiff served his next set of discovery requests in late April.

5

assignment of mortgage; (5) the AS400 file (this is Defendants' internal system of record); (6) relevant screenshots from the AS400 file, including as requested by Plaintiff: (a) DOC401R "Document Summary" screenshots; (b) DOC403R "Document Detail" screenshots; (c) DOC444R "Routing History" screenshots; (d) DOC406R "instance summary" screenshots; and (e) "CFC Document Control" screenshots; (7) files from Defendants' other internal systems of records, including the Document Management Portal system, emBTRUST, Deficiency Tracking System, HomeSaver and HomeBase; (8) the certification documents relating to the pooling and sale of the loans; (9) the investor history for each loan; (10) the MERS "milestone reports"; (11) documents sufficient to show the merger into Bank of America, N.A. of corporate entities for which endorsements were applied to notes; (12) certified court files from the relevant state court foreclosure proceedings for each loan; (13) the FHA claim submissions, including where applicable the Part A and Part B application, the Title Approval Package and the title insurance policy provided to HUD; (14) the webpage from FHA's website indicating that FHA has approved the conveyance of title (known as the "Title Approval Status" webpage); and (15) the deeds to the properties.

Defendants also have produced: (1) final versions of Defendants' non-privileged, formal written policy manuals or procedures manuals issued since February 9, 2012 (the date of the National Mortgage Settlement ("NMS") release) concerning: (a) promissory note endorsements; (b) MERS assignments; (c) delinquent note review processes; (d) FHA/HUD mortgage insurance claim submissions; (2) corporate resolutions, powers of attorney, and authorizations empowering Ms. Sjolander, Mr. Spector, and Ms. Meder to endorse promissory notes on behalf of the Defendants; (3) MERS stock certificates; (4) MERS certificates of incorporation; (5) final versions of MERS Systems Procedure Manuals that were in place from February 8, 2012

6

onward; (6) MERS Rules of Membership from February 8, 2012 to 2015; (7) SourceCorp contracts to the extent they address the application of endorsement stamps and such production is consistent with Defendants' confidentiality obligations to third parties[3]; (8) the April 4, 2012 NMS Consent Judgment and all reports of the Federal Monitor tasked with ensuring Defendants' compliance with the NMS Servicing Standards; and (9) the April 13, 2011 Consent Order with the Office of the Comptroller of the Currency ("OCC Consent Order"), the February 28, 2013 Amendment to the OCC Consent Order, the June 16, 2015 Termination of the OCC Consent Order, along with the corresponding press release conveying the OCC's definitive finding that Defendants had complied with the OCC Consent Order.

Plaintiff contends that Defendants' responses to his numerous Interrogatories are evasive. Magistrate Judge O'Sullivan has never agreed with Plaintiff's assessment in this regard. Plaintiff's suggestion that Defendants were somehow ordered to re-answer Interrogatories has no basis in the record.  Recently, Judge O'Sullivan permitted Plaintiff to exceed the 25-Interrogatory limit, and provided a deadline next week by which Defendants should provide responses to the same.  Defendants fully anticipate compliance with that deadline,

Given the scope of the case and the proportionality limitation of Federal Rule of Civil Procedure 26(b)(1), Defendants believe that their obligation to produce documents is essentially complete.  With respect to additional discovery, Plaintiff is beginning to schedule depositions. The parties will exchange initial expert reports on August 11, 2017, and complete expert depositions thereafter.  The parties have a telephonic status conference with Magistrate Judge

---

[3] Plaintiff notes that certain files were purged by SourceCorp.  Plaintiff fails to mention that these files were purged by SourceCorp long before this case was unsealed.  What is more, Defendants have provided an affidavit that copies of the purged files are in Defendants' possession.  Plaintiff has never requested the same.  Nor is there any reason to think the files are relevant to this case.

O'Sullivan on July 14, 2017, and a discovery hearing before Magistrate Judge O'Sullivan on August 10, 2017, to resolve any outstanding discovery disputes. D.E. 191.

4. **Are there any motions or discovery disputes pending? If so, indicate the status of each separately**.

Yes.

*Plaintiff-Relator's Statement*.

Though Defendants have already been ordered (at the hearing on June 29, 2017) to conduct a reasonable inquiry and provide any further responses to interrogatories and production of non-privileged documents by July 13, 2017, there is reason to expect that further discovery disputes may arise. To comply with that directive, the Defendants would need to provide (among other things) details of how and why they created their delinquent note endorsement processes, their practices for endorsing notes with rubber stamps, their practices for receiving assignments of mortgages from MERS, and their practices for submitting claims to the Federal Housing Administration (the "FHA").

As the SAC alleges at ¶39, Bank of America records show an *unendorsed* note filed in a foreclosure in 2008 had been sent for an "IFR Indorsement Review" and then to SOURCECORP on June 1, 2012, and Bank of America noting it received the endorsed note on June 2, 2012. SourceHOV (formerly SOURCECROP), has now produced a complete copy of its contract with Bank of America effective April 1, 2011, that identified a "90-Day Delinquent Note Indorsement Process" *See* SAC ¶¶ 31-32. It was during the IFR Indorsement Review or the 90 Day Delinquent Note Endorsement Process that "Bank of America or its contractor/agents were creating false records of its purported standing to foreclose. *See* SAC ¶39.

Only days before, on March 29, 2011, Bank of America consented to an order by Office of the Comptroller of the Currency (the "OCC") that found Bank of America had "litigated foreclosure proceedings and initiated non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned …." D.E. 178-4, Art I, ¶ 2(c). The SAC alleges that the Defendants committed foreclosure misconduct to "remediate" these missing endorsements to obtain foreclosure titles since April 4, 2012, leading to thousands of false claims for FHA mortgage insurance benefits.

The OCC also directed the bank to establish "processes to ensure that the Bank has properly documented ownership of the promissory note and mortgage … ***at all stages*** of foreclosure and bankruptcy litigation, including … lawful and verifiable endorsement and successive assignment of the note and mortgage or deed of trust to reflect all changes of ownership." *See* Consent Order [D.E. 178-4], Art. IV, § 1(e) (emphasis added). Plaintiff-Relator seeks discovery into those processes, and especially, whether they allowed for endorsements being affixed by stamps without the present intention of the purported signatory (*see* SAC ¶ 26) or after the commencement of the action (*see* SAC ¶ 39), which would also make the foreclosures defective (*see* SAC ¶ 27).

Defendants' Motion for Judgment on the Pleadings is currently pending. It is fully briefed. *See* D.E. 169, 176, 177 and 182.

Plaintiff-Relator anticipates timely objecting and seeking review of Judge O'Sullivan's decision on June 29, 2017 to limit discovery only the 39 foreclosures pleaded in the SAC.

Plaintiff-Relator's motion to enforce a subpoena for the production of documents by Promontory Financial Group, LLC is currently pending, but has not been fully briefed.

Promontory has not responded to the motion. The motion was filed originally in the District of Columbia but was ordered transferred to this Court on July 3, 2017.

Defendants have not moved to modify the Scheduling Order for Pretrial Conference and Trial [D.E. 124]. Evidently, Defendants would like to file "an initial round of summary judgment briefing (without prejudice to additional summary judgment briefing at the close of discovery) based on the document discovery to date." *See Defendants' Position*, *infra*. No motion requesting permission for bifurcated summary judgment has been filed.

*Defendants' Position*.

Pending Motions. Defendants' Motion for Judgment on the Pleadings is pending and is fully briefed. D.E. 169. Defendants argue that, to the extent Plaintiff's claims are based in whole or in part on the application of endorsement stamps or MERS assignments prior to February 9, 2012, Defendants were released from any False Claims Act liability as a result of the NMS release.

Further, Defendants respectfully request that the Court permit an initial round of summary judgment briefing (without prejudice to additional summary judgment briefing at the close of discovery) based on the document discovery to date. Plaintiff contends that the 39 foreclosures that resulted in FHA insurance claims did not yield foreclosure titles that were "good marketable titles" because, according to Plaintiff, Defendants lacked standing to foreclose because (a) the endorsement stamps applied to mortgage notes were allegedly unauthorized, and (b) the assignments of mortgages by means of MERS were a "legal nullity." Before the parties expend additional resources deposing numerous witnesses and preparing expert reports, Defendants submit that the Court could resolve this case *as a matter of law* in light of (a) the documentation surrounding the application of the endorsements stamps on mortgage notes, (b)

10

the irrelevance of endorsement stamps under the National Bank Merger Act[4], (c) the terms of the NMS release, (d) the legal irrelevance of MERS assignments of mortgages to standing to foreclose[5], and (e) the waiver resulting from the failure of borrowers to raise the endorsement stamp and MERS issues in their state court foreclosure proceedings[6]. Defendants respectfully request that the Court permit summary judgment briefing on these issues in July before unnecessary resources are spent on expert discovery.

Pending Discovery Disputes. Defendants have served limited discovery upon Plaintiff – namely, two sets of interrogatories (totaling 27 interrogatories) that primarily seek information concerning Plaintiff's factual basis for filing the complaint. Plaintiff answered only two of the interrogatories within the first set and objected that other interrogatories sought attorney work product. At the June 29, 2017 discovery hearing, Magistrate Judge O'Sullivan ordered Plaintiff to respond to Defendants' interrogatories, ruling that such interrogatories did not seek attorney work product. To date, Plaintiff has not provided supplemental responses to the first set of interrogatories; the due date for the second set is July 31, 2017.

In addition, Defendants have sought a protective order with respect to a third-party subpoena that Plaintiff served on Promontory Financial Group, LLC ("Promontory"). The subpoena includes twenty-five document requests related to Promontory's findings and communications associated with the Independent Foreclosure Review ("IFR"), which was

---

[4] 12 U.S.C. § 215a(e); 12 C.F.R. § 5.33g(4)(v).
[5] *See* Fla. Stat. § 673.3011; *Everhome Mortg. Co. v. Janssen*, 100 So. 3d 1239, 1240 (Fla. 2d DCA 2012) ("[P]ossession of the note determines standing to foreclose."); Ohio Rev. Code § 1303.31; *Deutsche Bank Nat'l Trust Co. v. Baxter*, 2017-Ohio-1364, 2017 WL 1365451 (8th Dist.), ¶ 18 ("[T]he allegation of improper assignment [of a mortgage] is irrelevant because under Ohio case law, the mortgage 'follows the note' it secures.").
[6] *See* Fla. Stat. § 702.036; Fla. Rule of Civ. P. 1.540(b); Ohio Rev. Code § 2325.03; *see also Estate of Williams v. Deutsche Bank Trust Co. Am.*, 2008 WL 3126167, at ¶ 27 (Ohio Ct. App. 2008).

11

established as part of the OCC Consent Order. The subpoena is overbroad and not relevant to Plaintiff's claims because the IFR focused on foreclosures that occurred in 2009 and 2010. The NMS Consent Judgment released Defendants from all claims based on mortgage servicing or foreclosure conduct that occurred prior to February 9, 2012. SAC, Ex. B, F-12.[7]

With respect to the discovery that Plaintiff has served, as noted in response to Question No. 3 above, Defendants sent Plaintiff an email documenting Defendants' plan for responding to Plaintiff's outstanding written discovery requests in light of Magistrate Judge O'Sullivan's ruling. Plaintiff has not responded, and as such Defendants are not aware of any discovery disputes with respect to the discovery that Plaintiff has served.

5. **Have the parties filed their Notice of Selection of Mediator as required by the Court's Order of Referral to Mediator?**

Yes, the parties filed their Notice of Selection of Mediator on April 24, 2017. D.E. 144.

6. **Have the parties agreed to a place, date and time for mediation and has the lead attorney for the plaintiff(s) completed the form Order Scheduling Mediation and submitted it to the Court? If not, state the reason(s) for failure to do so.**

Yes, the parties have agreed to mediation on October 4-5, 2017, before the Honorable Gerald Rosen (retired) in Detroit, Michigan. Plaintiff has submitted and the Court has entered the Order Scheduling Mediation. D.E. 171.

7. **Have the parties engaged in informal settlement negotiations? If so, explain the extent of the negotiations. If not, explain the reason(s) for the failure to do so.**

---

[7] On June 19, 2017, Plaintiff filed in the United States District Court for the District of Columbia a motion to compel Promontory to comply with the subpoena. *Jacobs v. Promontory Financial Group, LLC*, 17-mc-01467-KBJ-RMM (D.D.C.), D.E. 1. On July 3, 2017, the Court granted Promontory's motion to transfer venue to the Southern District of Florida, and Promontory's opposition to Plaintiff's motion to compel is due on July 21, 2017. D.E. 9.

12

*Plaintiff-Relator's Position*.

The parties have discussed settlement informally with the mediator, Chief Judge Rosen.

*Defendants' Position*.

The parties have not engaged in informal settlement negotiations. Plaintiff has indicated that he intends to seek a substantial amount in damages. Defendants believe this case is meritless on both the law and the facts. Thus, the parties have a significantly different perspective on the case such that informal settlement negotiations would not be fruitful.

8. **If the case is less than five days to try, have the parties conferred and have they agreed to a trial before a U.S. Magistrate Judge, wherein a date certain for trial may be given?**

*Plaintiff-Relator's Position*.

Per the Court's April 6, 2017 Scheduling Order, trial in this matter is scheduled for two weeks. D.E. 124. However, Judge O'Sullivan stated orally from the bench on June 29, 2017 that the case would be set specially for a two-week trial before him, if the parties consent to a reference.

*Defendants' Position*.

Per the Court's April 6, 2017 Scheduling Order, trial in this matter is scheduled for two weeks. D.E. 124.

Date:  July 6, 2017                              Respectfully submitted,

/s/  Court E. Keeley_____
Court E. Keeley, B.C.S.
**Jacobs Keeley, P.L.L.C.**
Alfred I. DuPont Building
169 East Flagler St., Suite 1620
Miami, FL 33131
Keeley@JAKElegal.com
Efile@JAKElegal.com
Tel:     (305) 358-7991
Fax:    (305) 358-7992
*Lead Counsel for Plaintiff-Relator*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 6th day of July 2017, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF. The undersigned also certifies that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/  Court E. Keeley_____
Court E. Keeley, B.C.S.

**SERVICE LIST**
*United States of America, ex rel., Bruce Jacobs vs. Bank of America Corporation, et.al.*
Case No. 1:15-CV-24585-UU
United States District Court, Southern District of Florida

| | |
|---|---|
| **Jacobs Keeley, P.L.L.C.**<br>Court E. Keeley, B.C.S.<br>Alfred I. DuPont Building<br>169 East Flagler St., Suite 1620<br>Miami, FL 33131<br>Keeley@JAKElegal.com<br>Efile@JAKElegal.com<br>Tel:    (305) 358-7991<br>Fax:   (305) 358-7992<br>*Lead Counsel for Plaintiff Relator* | **Wilmer, Cutler, Pickering, Hale & Dorr, L.L.P.**<br>Mathew T. Martens, Esq. (*pro hac vice*)<br>Carl Nichols, Esq. (*pro hac vice*)<br>Rachel Murphy, Esq. (*pro hac vice*)<br>Webb Lyons, Esq. (*pro hac vice*)<br>Andrea Robinson, Esq. (*pro hac vice*)<br>1875 Pennsylvania Ave., N.W.<br>Washington, DC 20006<br>Matthew.Martens@WilmerHale.com<br>Carl.Nichols@WilmerHale.com<br>Rachel.Murphy@WilmerHale.com<br>Webb.Lyons@WilmerHale.com<br>Andrea.Robinson@WilmerHale.com<br>Tel:    (202) 663-6000<br>Fax:   (202) 663-6363<br>*Lead Counsel for Defendants* |
| **The LS Law Firm**<br>Lilly Ann Sanchez, Esq.<br>Four Seasons Tower<br>1441 Brickell Ave., Suite 1200<br>Miami, FL 33131<br>LSanchez@TheLSfirm.com<br>Tel:    (305) 503-5503<br>Fax:   (305) 503-6801<br>*Co-Counsel for Plaintiff-Relator* | **Liebler, Gonzalez & Portuondo**<br>J. Randolph Liebler, Esq.<br>Christine Manzo, Esq.<br>44 W. Flagler St., Suite 2500<br>Miami, FL 33130<br>JRL@LGPlaw.com<br>CMM@LGPlaw.com<br>Tel:    (305) 379-0400<br>Fax:   (305) 379-9626<br>*Co-Counsel for Defendants* |

| | |
|---|---|
| **Law Office of Benedict P. Kuehne, P.A.**<br>Benedict P. Kuehne, B.C.S.<br>100 S.E. 2nd Street, Suite 3550<br>Miami, Florida 33134-2154<br>Ben.Kuehne@KuehneLaw.com<br>Efiling@KuehneLaw.com<br>Tel:    (305) 789-5989<br>Fax:    (305) 789-5987<br>*Co-Counsel for Plaintiff-Relator* | **Office of the United States Attorney**<br>James A. Weinkle, Esq.<br>99 N.E. 4th Street, Suite 300<br>Miami, FL  33131<br>James.Weinkle@USDOJ.gov<br>Tel:    (305) 961-9290<br>Fax:    (305) 530-7139<br>*Counsel for the United States of America* |
| **Haber Slade, P.A.**<br>David B. Haber, Esq.<br>Roger Slade, Esq.<br>Jacob Epstein, Esq.<br>Rebecca Casamayor, Esq.<br>201 S. Biscayne Blvd., Suite 1205<br>Miami, Florida  33131<br>DHaber@DHaberLaw.com<br>RSlade@DHaberLaw.com<br>JEpstein@DHaberLaw.com<br>RCasamayor@DHaberLaw.com<br>Tel:    (305) 379-2400<br>Fax:    (305) 379-1106<br>*Co-Counsel for Plaintiff-Relator* | **Kohn Law Group, Inc.**<br>Robert E. Kohn, Esq. (*pro hac vice*)<br>100 Wilshire Boulevard, Suite 700<br>Santa Monica, California  90401<br>RKohn@KohnLawGroup.com<br>Tel:    (310) 917-1011<br>Fax:    (310) 917-1001<br>*Co-Counsel for Plaintiff-Relator* |
| **Rachel V. Rose – Attorney At Law, P.L.L.C.**<br>Rachel Veronica Rose, Esq. (*pro hac vice*)<br>P.O. Box 22718<br>Houston, Texas  77227-2718<br>rvrose@rvrose.com<br>Tel:    (713) 907-7442<br>*Co-Counsel for Plaintiff-Relator* | |