UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:15-cv-24585-UU

BRUCE JACOBS,

    Plaintiff,

               v.

BANK OF AMERICA CORPORATION, *et al.*

    Defendants.

_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO
DISCOVERY ORDER**

In ruling on Defendants' motion to dismiss, this Court held that the "crux of Plaintiff's claims" under the False Claims Act ("FCA") has long been publicly disclosed. D.E. 116 at 12. Specifically, this Court noted the pre-lawsuit press reports that Defendants allegedly (a) applied unauthorized stamped endorsements on promissory notes and used MERS to assign mortgages before the April 2012 National Mortgage Settlement ("NMS"), and (b) continued to rely on those stamped promissory notes and MERS assignments in foreclosure proceedings even after the NMS. *Id.* at 11-12. Nonetheless, this Court held that Plaintiff was an original source – and thus not subject to the public disclosure bar – because he supposedly learned that, *after the NMS*, Defendants applied unauthorized stamped endorsement signatures to promissory notes and engaged in improper MERS assignments. *Id.* at 5-6, 13. And this Court held that Plaintiff had alleged with particularity five supposed instances of such post-NMS conduct. *Id.* at 21.

From these few alleged instances, Plaintiff now demands discovery as to all of Defendants' 81,000 post-NMS foreclosures and resulting FHA mortgage insurance claims nationwide. But as Judge O'Sullivan explained, particularized allegations of a handful of supposedly false claims do not by themselves entitle a qui tam plaintiff to nationwide discovery of all claims; additional facts must be alleged with particularity to establish that those claims are representative of nationwide misconduct and warrant discovery of such breadth. Judge O'Sullivan concluded that nationwide discovery is not warranted here given the absence of particularized factual allegations of post-

1

NMS misconduct nationwide. Accordingly, he limited discovery to the five foreclosures alleged in paragraph 56 of the Complaint and an additional 34 foreclosures about which some information was supplied in an attachment to the Complaint. D.E. 198 at 1. Judge O'Sullivan's discovery order was entirely consistent with decisions in this and other circuits to the effect that "discovery in qui tam actions must be limited and tailored to the specificity of the complaint." *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, 2008 WL 4057549, at *1 (M.D. Fla. Aug. 27, 2008); *see also U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006) (holding that the "particularity requirement of Rule 9(b), if enforced, . . . will result in claims with discernable boundaries and manageable discovery limits."); *U.S. ex rel. Duxbury v. Ortho Biotech Prods., Inc.*, 719 F.3d 31, 39 (1st Cir. 2013) (holding that district court acted within its discretion in "limit[ing] discovery to those allegations, contained in paragraph 211 of the amended complaint, which satisfied Rule 9(b)'s particularity requirement").

Rather than address Judge O'Sullivan's actual analysis, Plaintiff first creates, and then attacks, a straw man. In particular, Plaintiff's objections hinge on his mischaracterization of Judge O'Sullivan's discovery order as having laid down a categorical rule that, in order to obtain nationwide discovery, a qui tam plaintiff must be a company insider who alleges a statistically valid random sample of false claims. D.E. 200 at 8. Judge O'Sullivan said nothing of the sort. Rather, Judge O'Sullivan ruled that the allegations of *this* Complaint were insufficient to warrant nationwide discovery in the absence of an identified connection between the few "false" claims alleged in the Complaint and other foreclosure actions brought by Defendants across the country under varying state foreclosure regimes. *Compare U.S. ex rel. Vainer v. Davita, Inc.*, 2012 WL 12832381, at *8 (N.D. Ga. Mar. 2, 2012) (holding that alleged false claims were "sufficiently illustrative" to warrant nationwide discovery because "these billing practices were mandated by company-wide policies"). Stated more simply, the Complaint never alleges that unauthorized stamped endorsements and MERS assignments were used by Defendants in foreclosure actions nationwide. Thus, under the discovery principles discussed above, Judge O'Sullivan's order limiting discovery to the 39 loans where such conduct is alleged was not "clearly erroneous or contrary to law" so as to justify reversal. 28 U.S.C. § 636(b)(1)(A).

Judge O'Sullivan's ruling is all the more reasonable in light of Plaintiff's delay in bringing the nationwide discovery issue to the Court for resolution. In early February 2017, Defendants served objections to Plaintiff's interrogatories and document requests, making clear their position

2

that discovery in this matter should be limited to the 39 loans. Defendants offered to meet and confer regarding those objections, if Plaintiff so desired. Plaintiff's counsel expressly declined that offer, and took no action to compel a response within the 30-day time limit set out in Local Rule 26.1(g)(1), the very purpose of which is to ensure that discovery issues are "not held until shortly before the close [of] discovery." *Rocket Real Estate, LLC v. Maestres*, 2016 WL 4468286, at *1 (S.D.Fla. Aug. 24, 2016). Instead, Plaintiff waited until late April – more than a month after this Court denied the motion to dismiss – to serve a new set of discovery requests again seeking discovery concerning nationwide claims. Because of Plaintiff's delay, the issue of nationwide discovery has only now reached the Court for resolution in late July, on the eve of expert discovery. To reward Plaintiff's belated pursuit of this issue would impose a draconian penalty upon Defendants – who timely raised their objections and offered to confer in early February and who have deployed significant resources diligently to produce substantial discovery regarding the 39 loans. In other words, a reversal of Judge O'Sullivan's ruling would provide qui tam plaintiffs with a playbook of sorts, encouraging them to delay their pursuit of nationwide claims until late in the discovery schedule in hopes of wringing a settlement out of defendants when already onerous nationwide discovery is all the more unworkable. The Eleventh Circuit has warned of the risk that qui tam plaintiffs could compel settlements through sweeping nationwide discovery demands. *See U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359-60 (11th Cir. 2006). Plaintiff's tactic here takes that risk to a new level. Judge O'Sullivan did not clearly err in precluding Plaintiff's untimely pursuit of nationwide discovery.

## BACKGROUND

In September 2016, Plaintiff's First Amended Complaint was unsealed and served on Defendants. *See* D.E. 16; D.E. 33. Defendants moved to dismiss. D.E. 43. On December 20, 2016, this Court granted the motion to dismiss, holding that Plaintiff failed to allege, plausibly or with particularity, that Defendants submitted any false claims. D.E. 73.

On January 12, 2017, Plaintiff's Second Amended Complaint ("SAC") was unsealed. D.E. 84. The SAC alleged that Defendants did "business in the Southern District of Florida," SAC ¶¶ 4-10, and that Plaintiff learned of false claims filed by Defendants as a result of his litigation of foreclosure actions "in South Florida courts," *see* SAC ¶¶ 3, 33. Specifically, the SAC alleged that, subsequent to the April 2012 NMS, Defendants "pursue[d] judicial foreclosure cases to enforce mortgages secured by notes that had not been endorsed to them at the time of filing of

3

those cases" and "rel[ied] upon purported assignments . . . from MERS." SAC ¶¶ 27, 28. But, Plaintiff alleged, Defendants lacked standing under Florida law to prosecute those judicial foreclosure actions. *See id.* Plaintiff contends that a foreclosure action pursued without standing fails to yield "good marketable title," and thus Defendants made a false claim when they conveyed those purportedly defective foreclosure titles to FHA as part of mortgage insurance claims, contrary to the regulatory obligation to convey good marketable title. *See id.* ¶¶ 29-30. The SAC alleged five specific foreclosure actions in which this supposed misconduct occurred. *See id.* ¶ 56.

The SAC also attached a spreadsheet of 39 mortgage loans (including the five identified in the SAC itself) that purportedly resulted in false FHA claims. *Id.*, Ex. FF. However, 34 of the loans in the spreadsheet provided only "est." dates of the supposed FHA claims, identified no FHA claim number, and said "Discovery Pending" as to when FHA paid those claims and the amount of such payments. *See id.* This was plainly inadequate to satisfy the Rule 9(b) pleading standard; to plead a FCA claim, "the minimum indicia of reliability required to satisfy the particularity standard are the specific contents of actually submitted claims, such as billing numbers, dates, and amounts." *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 797 (11th Cir. 2014).

The SAC ended with a conclusory assertion that, "[u]pon information and belief," "all" of Defendants' FHA mortgage insurance claims since the April 2012 NMS have been false "when" the underlying mortgage judicial foreclosures resulted from the presentation of notes with stamped endorsements and the MERS assignments. SAC ¶ 56. But the Eleventh Circuit has emphasized that a complaint must plead the factual basis for such belief, as Rule 9(b) should "not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1314 n. 25 (11th Cir. 2002) (internal quotation marks omitted). The SAC fails to allege "when" foreclosures by Defendants resulted from the use of notes with unauthorized stamped endorsements or MERS assignments. Did Defendants use such notes in foreclosures in every state or only some? If only some states, which ones? Did Defendants do so as to all foreclosures in those states? If so, in what years? And did any of those particular foreclosures result in FHA mortgage insurance claims? The SAC never answers, even upon information and belief, any of these questions. None of this information is uniquely within the

possession of Defendants; rather, it is presumably a matter of public record in state court foreclosure actions.[1]

The day after the SAC was unsealed, Plaintiff served his second set of discovery requests. D.E. 87. Defendants objected in full to certain of these requests, but agreed to produce documents in response to others, serving timely responses on February 13, 2017. D.E. 186-3. In particular, Defendants provided information concerning the 39 loans, but objected to providing information regarding thousands of other FHA claims about which Plaintiff sought discovery but had made no particularized allegations in the SAC. *Id*. Three days later, Defendants' counsel offered to meet and confer, but Plaintiff's counsel declined the invitation, stating that he was not ready to do so. D.E. 186-4.

On March 21, 2017, this Court denied Defendants' motion to dismiss the SAC. D.E. 116. The Court held that Plaintiff had satisfied the Rule 9(b) pleading standard with respect to "a[t] least four [of the five] foreclosure cases" specifically identified in the SAC. *Id.* at 21. But the Court did not hold, nor did its opinion suggest, that Plaintiff had adequately alleged anything more than those four or five claims. Moreover, the Court held that "the crux of Plaintiff's claims were already disclosed" by public sources (and would therefore be barred), *id.* at 12, but that Plaintiff was an original source – and thus could avoid the FCA's public disclosure bar – because, "based on his own experience litigating foreclosure cases," Plaintiff "allegedly uncovered that Defendants were *continuing to robo-sign promissory notes* in at least five (5) different instances, even *after entry of the [NMS] Consent Judgement*" in April 2012. *See id*. at 5, 13 (emphasis added).

Following the ruling on the motion to dismiss, Plaintiff's counsel belatedly asked to confer during the week of April 3rd regarding his second set of discovery requests, even though the 30-day deadline for moving to compel further responses to those discovery requests had long since passed. S.D. Fla. Local Rule 26.1(g)(1); D.E.186-5. During that conference, Defendants agreed to provide Plaintiff with copies of the promissory notes and FHA insurance submissions for the 39

---

[1] In any event, a relator is not subject to "a more lenient pleading standard because evidence of fraud was uniquely held by the defendant. [Relator] is not without avenues for obtaining information." *Clausen*, 290 F.3d at 1314 n. 25. While a relator's status as a corporate outsider may mean he has "to work hard to learn the details of the alleged schemes, … neither the Federal Rules nor the Act offer any special leniency under these particular circumstances to justify [relator] failing to allege with the required specificity the circumstances of the fraudulent conduct he asserts in his action." *Id.* at 1314.

FHA claims.  D.E. 158.  Plaintiff did not request information concerning *any* additional FHA claims.  *See id.*  However, Plaintiff's counsel suggested that he was preparing a "sampling proposal" with regard to additional FHA claims that Defendants may have submitted.  Martens Decl., Ex. 1 at 4-5.

On April 14, 2017, a new attorney for Plaintiff (Mr. Kohn) joined the matter.  D.E. 186-6.  On April 18, 2017, Plaintiff's counsel abruptly announced that Plaintiff would not be making a sampling proposal.  Martens Decl., Ex. 1 at 1.  Then, on April 29, 2017, Plaintiff served his Amended Third Set of Interrogatories, demanding that Defendants identify every single FHA claim made following foreclosure (whether judicial or non-judicial) *nationwide* since the April 2012 NMS – a number totaling 81,000 – and answer a series of questions regarding each such FHA claim and underlying foreclosure.  D.E. 186-7 (Interrog. Nos. 1-9).  Plaintiff also demanded the production of documentation for every one of those claims and foreclosures.  D.E. 186-8; 186-9.

Defendants served timely objections to these discovery requests, explaining that the SAC did not allege with particularity a nationwide fraud affecting all FHA claims.  D.E. 186-11; 186-12.  Instead, Defendants produced relevant documents in their possession (totaling over 130,000 pages) concerning the 39 loans.  186-1 ¶ 14.  Defendants have produced copies of: promissory notes; MERS assignments; AS400 files (this is the Bank's internal system of records); investor history files; embTrust files (the internal records of ReconTrust, the Bank's document custodian); Bank of America's Home Loan Routing History; corporate resolutions, powers of attorney, and authorizations related to promissory note endorsements and MERS assignments; pooling certifications related to Ginnie Mae's purchase of the loans; state court foreclosure files; and the full FHA claim submissions.  *Id*.  In short, Defendants have produced documents in their possession covering the full life cycle of each of the 39 loans.[2]  Even further, Defendants have also produced other categories of relevant documents requested by Plaintiff, including policies and

---

[2]  This documentation demonstrates that, contrary to the allegations of the SAC, the stamped endorsements on every one of the 39 promissory notes was authorized and applied prior to the filing of those foreclosure actions.  Thus, Plaintiff has shifted his theory, as reflected in his discovery objections, and is now arguing that the note endorsements, made in the names of Michele Sjolander, Laurie Meder, and David Spector, were applied after these individuals all left the employ of Defendants.  D.E. 200 at 3.  This newfound theory is bizarre since, as Plaintiff knows, Ms. Sjolander and Ms. Meder are still employed by Defendants to this day.

procedures related to the 39 loans with respect to endorsement practices, MERS assignments, and FHA claim submissions.[3]

Not only has this production been comprehensive,[4] but it has also been burdensome. Due to the breadth and scope of Plaintiff's voluminous discovery requests, Defendants have had to collect documents from no less than 10 different internal data sources. *Id.* ¶ 15. Collecting the relevant information for the 39 loans – some of which go as far back as 2003 – has taken 22 hours collectively by two bank employees. D.E. 186-14 ¶ 6. And the production associated *with a single loan* amounts to well over 1,000 pages of documents. D.E. 186-1 ¶ 14. Thus, producing the relevant loan documents for each of 81,000 loans by Defendants since April 2012 would require the production of roughly 81 *million* pages of documents and would take Defendants' employees an estimated 45,000 hours to complete. It is no wonder that Judge O'Sullivan observed that completing nationwide discovery would take "until … we're all dead and in our graves." D.E. 180 at 52.

Despite being on notice since early February of Defendants' position that discovery in this matter is properly limited to, at most, the 39 loans, Plaintiff did not bring this issue to the Court for resolution until mid-June. In his briefing before Judge O'Sullivan, Plaintiff argued that he was entitled to discovery as to all of Defendants' FHA claims nationwide since the April 2012 NMS, and Plaintiff protested any geographical limits on discovery. D.E. 178 at 4 ("there is no need for geographically limiting the discovery"). In his briefing, Plaintiff made only two arguments in support of his nationwide discovery demand. First, he pointed to the allegation in the SAC that, "upon information and belief," all of Defendants' FHA claims were false. D.E. 178 at 2; D.E. 185 at 2. Second, he invoked a passage of deposition testimony by Maria Garner that was neither recited in the SAC nor attached as an exhibit thereto. D.E. 178 at 4. Plaintiff conceded during the June 29th hearing before Judge O'Sullivan that he had failed to bring this issue to the Court earlier through a timely motion to compel in response to Defendants' discovery objections in February.

---

[3]   Plaintiff argues that, unless Judge O'Sullivan's Discovery Order is reversed, "Defendants can keep secret the information" about certain of Defendants' processes, including the "Delinquent Note Endorsement Process." D.E. 200 at 11. But Plaintiff knows full well that Defendants have *already* produced documents and responded to interrogatories related to this and other processes.
[4]   As even Plaintiff's counsel acknowledged to Judge O'Sullivan, there has been "significant compliance from the Defendants" with regard to discovery on the 39 loans. D.E. 202 at 5.

*See* D.E. 199 at 24 (Mr. Kohn: "What happened is, through whatever happenstance, the 30-day deadline for moving to compel had been allowed to lapse.").[5]

After briefing and extended oral argument at the June 29th hearing, Judge O'Sullivan ruled that discovery should be limited to, at most, the 39 loans as to which "there has already been substantial discovery." D.E. 199 at 35. As Judge O'Sullivan explained, Plaintiff's position that the allegation of a few false claims entitles him to nationwide discovery "would mean that any time you were able to show that a national business did something fraudulent against the United States that that would then open up . . . discovery [of] every time they did it in the entire United States." *Id.* at 26-27. This is, as Judge O'Sullivan recognized, not the law. Rather, Judge O'Sullivan noted that Plaintiff must offer particularized allegations suggesting that the conduct observed in the handful of foreclosures pled in the SAC is "representative of all these cases that Bank of America is doing throughout the country." *Id.* at 28. Judge O'Sullivan noted that Plaintiff's theory of nationwide conduct was "a big leap." *Id.*[6]

Judge O'Sullivan ruled that "discovery should be limited at most to the 39 allegations that are in the complaint." *Id.* at 34. Those loans consisted of the five pled with particularity in the SAC and the 34 additional ones listed in an exhibit with varying amounts of information that, Judge O'Sullivan noted, was "maybe a start at showing that [the alleged misconduct] is occurring in those other 34." *Id.* In full accordance with Eleventh Circuit precedent, Judge O'Sullivan explained that "discovery in these qui tams is to be limited to the pleadings," and to obtain nationwide discovery Plaintiff must "show that [the example] is representative of something." *Id.*

---

[5] The purpose of the 30-day deadline for filing motions to compel is "to prompt early resolution of discovery disputes and 'to ensure that discovery motions are filed when ripe and not held until shortly before the close [of] discovery.'" *Alexis, LLC v. French West, Inc.*, 2015 WL 12642210, at *1 (S.D.Fla. Oct. 9, 2015) (quoting 1998 Comments, S.D. Fla. L.R. 26.1).

[6] Indeed, Plaintiff's position was that alleging a single instance of supposed fraud anywhere in the country automatically entitles a qui tam plaintiff to nationwide discovery. *See* D.E. 180 at 21-22 ("THE COURT: And the issue in this case is … [if] you have someone who is aware of fraud that is occurring in Miami, do you get to that and say, well, it must be occurring in the entire United States? MR. KOHN: In that case, we are allowed to seek discovery into other instances of fraud beyond what the relator had specifically discovered exactly for that reason that, yes."). This argument is plainly contrary to the law. *See U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 2016 WL 3961840, at *10 (S.D.Fla. Jan. 11, 2016) ("Qui tam cases are distinguished from other legal actions in that relator-plaintiffs must possess this information [concerning the particular false claims they are alleging] *before* discovery has taken place." (emphasis in original)), *aff'd*, --- F.3d. ---, 2017 WL 2296978 (11th Cir. May 26, 2017).

at 34.  Judge O'Sullivan made no reference to statistical sampling, nor did he announce a categorical rule that a qui tam plaintiff must be a company insider to obtain nationwide discovery.  Rather, he simply concluded that "*the pleading in this case* does not sufficiently allege a nationwide conduct by the Defendant and … it is not with any particularity anyway." *Id.* at 34-35 (emphasis added).  Accordingly, Judge O'Sullivan limited discovery to the five specific examples alleged with particularity "that Mr. Jacobs became knowledgeable of," *id.* at 34, and to the additional 34 loans where Plaintiff had made "maybe a start at showing" a false claim and on which "there has already been substantial discovery," *id*. at 34-35.  Beyond those 39 loans, however, Judge O'Sullivan concluded that the SAC contained no particularized allegations – not in paragraph 56 or elsewhere – to suggest that fraudulent judicial foreclosures were occurring nationwide following the NMS.

## STANDARD OF REVIEW

A party appealing a discovery ruling must demonstrate that the magistrate's order was "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  This is a "heavy burden." *Doe v. Lynn University, Inc.*, 2017 WL 275448, *1 (S.D.Fla. 2017).  It is "extremely difficult to justify alteration of the magistrate judge's nondispositive actions," 12 Wright, Miller & Marcus, Federal Practice and Procedure Civ. 2d § 3069, because "[c]lear error is a highly deferential standard of review," *Holton v. City of Thomasville School Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005).  An order is clearly erroneous "if the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed." *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 2008 WL 4500258, at *2 (S.D.Fla. 2008) (Ungaro, J.) (internal quotation marks omitted). "The mere fact that a reviewing court might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Id.*

Because the "clearly erroneous" standard of review "resembles an appellate function," it "is inappropriate for a District Court to consider materials not before the Magistrate Judge in reaching the conclusion that the Magistrate Judge's decision was clearly erroneous." *Bouton v. Ocean Properties, Ltd.*, 2017 WL 2720927, at *1 (S.D.Fla. 2017) (internal quotation marks omitted); *see also Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[We] hold that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."); *Ladd v. City of West Palm Beach*, 2015 WL 13310404,

9

*1 (S.D. Fla. Nov. 18, 2015) ("At the outset, the Court declines to consider arguments raised for the first time in Plaintiff's Objections, as doing so nullifies the Magistrate Judge's consideration of the matter.").

## ARGUMENT

### I. Magistrate Judge O'Sullivan Did Not Clearly Err in Limiting Discovery to the 39 Loans.

In his discovery objections, Plaintiff does not dispute that discovery must be limited in FCA cases to claims pled with particularity. Nor could he. Federal Rule of Civil Procedure 26(b)(1) provides that discovery may only be had as to "any nonprivileged matter that is relevant to any party's claim or defense." This means that "discovery in qui tam actions must be limited and tailored to the specificity of the complaint." *Bane*, 2008 WL 4057549, at *1. As the Eleventh Circuit has explained, the "particularity requirement of Rule 9(b), if enforced, . . . will result in claims with discernable boundaries and manageable discovery limits." *Atkins*, 470 F.3d at 1360. Obviously, Rule 9(b) can only "result in" claims with "manageable discovery limits" if the discovery permitted under Rule 26(b)(1) is limited to the claims pled with particularity under Rule 9(b). *See Duxbury*, 719 F.3d at 39 (holding that the district court properly "limited discovery to those allegations, contained in paragraph 211 of the amended complaint, which satisfied Rule 9(b)'s particularity requirement"). In this way, "Rule 26(b)(1) dovetails quite nicely with the dictates of Rule 9(b) regarding pleading special matters with particularity and the purposes underpinning the rule." *U.S. ex rel. Stewart v. The Louisiana Clinic*, 2003 WL 21283944, at *8 (E.D. La. June 4, 2003). In short, district courts in qui tam actions must impose "logical and principled limits on what has to be produced" when the plaintiff seeks to obtain through discovery "every . . . claim submitted by Defendant." *Atkins*, 470 F.3d at 1359-60.

A qui tam plaintiff may not obtain nationwide discovery merely by alleging a few fraudulent claims and then baldly asserting that the fraud was "nationwide" in scope. *See Duxbury*, 719 F.3d at 39. Rather, a relator must allege with particularity some basis for inferring that the false claims pled are illustrative of a broader scheme. *See, e.g.*, *U.S. ex rel. Vainer v. DaVita, Inc.*, 2012 WL 12832381, at *8 (N.D. Ga. Mar. 2, 2012) (holding that "the examples pled with specificity are sufficiently illustrative of the schemes they represent . . . to warrant discovery *in light of* the allegations that these billing practices were mandated by company-wide policies" (emphasis added)); *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 511 n.

17 (6th Cir. 2007) ("For example, if a relator worked in a defendant hospital's billing department, and all the examples of false claims were culled from the hours when the relator was working, the relator would still be entitled to discovery on a class of claims that included all hours, *provided that* the relator produced reasons to believe that at all times the hospital billed claims in a similar manner" (emphasis added)). Stated another way, "the examples that a relator provides will support more generalized allegations of fraud only to the extent that the relator's examples are *representative samples* of the broader class of claims." *Bledsoe*, 501 F.3d at 510 (emphasis in original). However, "the concept of a false or fraudulent scheme should be construed as narrowly as necessary to protect and promote the policies promoted by Rule 9(b)." *Id.*

Consistent with these mandates, Judge O'Sullivan examined the SAC and concluded that Plaintiff had failed to allege particularized facts providing a basis from which to make the "big leap" of inferring that Defendants were submitting false FHA mortgage insurance claims nationwide following the NMS. *See* D.E. 199 at 28. As an initial matter, the SAC never uses the word "nationwide" (or even "state-wide"), alleges only that Defendants "does business in the Southern District of Florida," SAC ¶ 4, and alleges that Plaintiff learned of the supposed misconduct in question as a result of litigating foreclosure actions in "South Florida courts," *id.* ¶ 3. Plaintiff alleges no basis from which to infer that the few instances of "false" claims alleged in the SAC are illustrative of a post-NMS nationwide scheme. Rather, Plaintiff's position was that "any time you were able to show that a national business did something fraudulent against the United States that that would then open up . . . discovery [of] every time they did it in the entire United States." *See* D.E. 199 at 26-27; D.E. 180 at 21-22. That is not the law; a qui tam plaintiff who adequately pleads an FCA claim against a nationwide business has not automatically pled a nationwide case that warrants nationwide discovery. *See, e.g.*, *Duxbury*, 791 F.3d at 39. Indeed, this is precisely the risk of discovery abuse that, the Eleventh Circuit has warned, district courts must be vigilant to prevent. *See Atkins*, 470 F.3d at 1359-60.

Unlike the plaintiff in *Vainer*, Plaintiff does not allege that the conduct he observed in a handful of foreclosure actions was "mandated by company-wide policies." 2012 WL 12832381, at *8. Nor does the SAC allege with particularity a basis from which to infer that the conduct Plaintiff supposedly observed was part of a company-wide practice. *Compare U.S. ex rel. Spay v. CVS Caremark Corp.*, 2013 WL 4525226, at *6 (E.D.Pa. Aug. 27, 2013) (noting that plaintiff "avoided the pitfall of speculation that was fatal to nationwide claims in other cases" because the

11

complaint "defined various company-wide practices that were part of Defendants' nationwide claims-processing services"). Plaintiff does not allege that he has knowledge of Defendants' post-NMS mortgage lending practices outside of Florida, whether Defendants had uniform nationwide policies or procedures concerning foreclosures, whether or where Defendants offered FHA-insured mortgages, whether or when Defendants foreclosed on FHA-insured mortgages in other states, or the foreclosure procedures and standing rules in those states. *Cf. U.S. ex rel. Bibby v. Wells Fargo, N.A.*, 165 F. Supp. 3d 1340, 1343-44, 1346, 1348 (N.D.Ga. 2015) (qui tam plaintiffs were "quasi-insiders" who worked "across almost the entire South" and "received express instructions" from the defendant bank about the "routine practice" at issue).

Because foreclosure law varies in relevant respects from state to state, even a particularized allegation of a fraudulent foreclosure scheme in the state of Florida would not plausibly suggest a fraudulent scheme elsewhere. Plaintiff's lawsuit does not purport to concern foreclosures (and thus FHA claims) in non-judicial foreclosure proceedings; Plaintiff alleges only that "Defendants intended to (and did) pursue *judicial foreclosure* of mortgages secured by falsely-stamped notes … [and] by relying upon purported assignments . . . from MERS." SAC ¶¶ 26-28, 47 (emphasis added). Therefore, FHA insurance claims based on foreclosures that occurred in non-judicial foreclosure states are not part of this litigation and cannot be the proper subject of discovery.[7] Even as to judicial foreclosures, Plaintiff alleges only that the use of endorsement stamps and MERS assignments impaired standing to foreclose under *Florida* law. *Id.* ¶¶ 27-28. The SAC does not survey the standing rules in every other judicial foreclosure state. In short, Plaintiff fails to allege a basis for inferring that his purported experiences in a handful of foreclosure actions in Florida are illustrative of Defendants' post-NMS foreclosure practices nationwide. *See U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 779 F. Supp. 2d 709, 723 (N.D. Tex. 2011) (holding that the "specific facts Wall has alleged relate solely to her work in Denton, Texas, and cannot support by inference her general pleading, 'upon information and belief,' that similar frauds were also perpetrated in Indiana, Massachusetts, Nevada, and New Mexico").

Plaintiff points to a number of FCA decisions that stand for the unremarkable proposition that a qui tam plaintiff, having adequately pled a nationwide fraud, is entitled to discovery on the entirety of that scheme. D.E. 200 at 5-6. But these citations simply beg the question whether the

---

[7] A list of the types of foreclosures allowed by each state is available at http://www.realtytrac.com/real-estate-guides/foreclosure-laws/ (last visited July 18, 2017).

complaint here pled a nationwide scheme with the required particularity so as to warrant nationwide discovery. For the reasons discussed above, Judge O'Sullivan did not clearly err in holding that, on the allegations of the complaint here, Plaintiff was not entitled to nationwide discovery.

In his briefing before Judge O'Sullivan, Plaintiff made only two arguments in his bid for nationwide discovery. First, he relied on the SAC's allegation that, "upon information and belief," "all" of Defendants' FHA claims were false "when" they followed foreclosures accomplished with stamped promissory note endorsements and MERS assignments. D.E. 178 at 2; D.E. 185 at 2. While Plaintiff now complains that Judge O'Sullivan's Order "focused on the 'information and belief' language within Paragraph 56 of the SAC," D.E. 200 at 7, this was the language that Plaintiff repeatedly cited in his briefing in support of his claim for nationwide discovery. D.E. 178 at 2; D.E. 185 at 2. Indeed, Plaintiff never pointed to any other paragraph of the SAC as supporting a nationwide FCA claim. An unadorned "information and belief" allegation is insufficient to warrant nationwide discovery. *See Spay*, 2013 WL 425226, at *3 ("The simple inclusion of a cursory allegation that the Defendants' conduct is ongoing – made on information and belief only and without any of the specificity mandated by Federal Rule of Civil Procedure 9(b) – does not automatically entitle Plaintiff to obtain extensive discovery").[8] The SAC contains no allegations, even upon information and belief, as to "when" the supposed use of stamped endorsements and MERS assignments occurred; there are certainly no allegations that it occurred in every state nationwide.

Second, Plaintiff relied on a snippet of deposition testimony by Maria Garner. D.E. 178 at 4. This excerpt was not recited in or attached to the SAC, and thus cannot provide a basis for permitting nationwide discovery. In any event, the newly cited testimony says nothing about

---

[8] Plaintiff relies on the unpublished *U.S. ex rel. Hill v. Morehouse Med. Assocs.*, 2003 WL 22019936 (11th Cir. Aug. 15, 2003), to argue that his "information and belief" pleading is sufficient. But the Eleventh Circuit has explicitly called *Hill* into question: "An unpublished opinion, *Hill* is not binding precedent." *Atkins*, 470 F.3d at 1358, n. 15; *see also Jallali v. Sun Healthcare Grp.*, 667 F. App'x 745, 746 (11th Cir. 2016) ("We are unpersuaded by any suggestion that an unpublished opinion of this Court in any way alters the law as stated in a prior, published opinion of this Court … Where, as here, we have binding precedent specifically addressing the legal issue, we seek no guidance from unpublished opinions."). Accordingly, even if *Hill* supported Plaintiff's position, which it does not, it would be unpersuasive.

surrogate stamped endorsements, Defendants' use of such endorsements in foreclosure proceedings, or any ensuing FHA mortgage insurance claims. *Id*. More importantly, Plaintiff knows full well that the testimony by Ms. Garner concerns conduct discontinued in 2011 (a year prior to the NMS), while this case is explicitly limited to post-NMS conduct (i.e., post-April 2012).[9] Whatever Ms. Garner's testimony concerning pre-NMS practices, it does nothing to warrant nationwide discovery concerning post-NMS foreclosures. *See U.S. ex rel. Mastej v. Health Mgm't Assocs., Inc.*, 591 F. App'x 693, 709 (11th Cir. 2014) (holding that a company employee aware of the submission of false claims by his employer during his employment does not have a basis from which to infer that those examples are representative of the submission of false claims after his employment ceases).[10]

Plaintiff further criticizes Judge O'Sullivan for not addressing certain other arguments in support of Plaintiff's bid for nationwide discovery. D.E. 200 at 7 ("The Discovery Order did not address those allegations."). But this criticism is misleading at best. The fact that Judge O'Sullivan's Discovery Order – a two-page Order submitted by the Plaintiff, not an extensive opinion – did not address each of Plaintiff's arguments does not mean that Judge O'Sullivan did not consider them.

In his objections, Plaintiff has now made new, additional arguments. It is inappropriate for this Court to consider these arguments for the first time on appeal of Judge O'Sullivan's Order. *See Bouton*, 2017 WL 2720927, at *1; *Williams*, 557 F.3d at 1292; *Ladd*, 2015 WL 13310404, at *1. In any event, the newly minted arguments do nothing to advance Plaintiff's bid for discovery as to all FHA claims nationwide. Plaintiff cites his allegations, in paragraphs 37 and 54 of the SAC, that "thousands" of false FHA claims were made. D.E. 200 at 6-7. Such conclusory

---

[9] In a similar vein, Plaintiff misleadingly suggests in a footnote that Defendants' counsel conceded at the hearing before Judge O'Sullivan that Defendants engaged in certain practices nationwide. D.E. 200 at 11. This is a red herring. Defendants' counsel was clearly describing a pre-NMS practice of using authorized stamps. Defendants' counsel said nothing about post-NMS conduct, much less a post-NMS practice or policy of applying stamps without authorization, nationwide or otherwise.

[10] At the hearing on June 29th, Plaintiff offered an additional argument, not appearing in his briefs, namely that two MERS assignments attached to the SAC were signed and notarized in California. D.E. 199 at 25. But both of those MERS assignments were filed in foreclosure actions in Florida, and thus provided no insight into Defendants' conduct in foreclosure actions in California. What is more, California is a non-judicial foreclosure state, while the SAC alleges fraud only in judicial foreclosure proceedings. *See* SAC ¶¶ 26-28.

allegations, entirely devoid of any factual details, do not satisfy Rule 9(b) and certainly do not entitle Plaintiff to obtain nationwide discovery. *See, e.g.*, *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552 at 557 (8th Cir. 2006) (holding that a conclusory allegation that "'every' claim was fraudulent" is insufficient). Plaintiff also points to his own foreclosure case and his allegation that an endorsement stamp was applied to his promissory note in August 2011 (prior to the NMS). D.E. 200 at 7. As an initial matter, Plaintiff's own foreclosure action is irrelevant to this lawsuit because Defendants did not acquire title to Plaintiff's property or submit a mortgage insurance claim to FHA, nor does Plaintiff contend that they did. *See* SAC ¶ 32-35. Regardless, the allegation related to Plaintiff's own foreclosure merely proves the point: Plaintiff's supposed knowledge is confined to a handful of cases that he litigated in South Florida, and the SAC contains no allegations to suggest that those cases (assuming they involved irregularities) are in any way representative of nationwide conduct.[11]

Plaintiff also complains that Judge O'Sullivan required relators to allege a statistically valid random sample of claims in order to obtain nationwide discovery. D.E. 200 at 8. Judge O'Sullivan never stated or even suggested that such a requirement existed. In fact, at oral argument, when Plaintiff's counsel argued that Plaintiff should not be required to plead "a statistically valid random sample," Judge O'Sullivan did not disagree, but rather responded – unremarkably and in accord with Eleventh Circuit precedent – that the claims alleged in the SAC must be representative examples, a point that Plaintiff's counsel himself acknowledged.[12] Judge O'Sullivan then found that, with respect to Plaintiff's SAC, there were no allegations or other information to suggest that the four or five claims alleged with particularity were representative of other foreclosure actions.[13]

---

[11] Plaintiff also cites Exhibit Q of the SAC, an order from a case Plaintiff litigated that discusses testimony from Michele Sjoalnder. But as Plaintiff well knows, that order *was vacated*, so it is curious that Plaintiff would cite it here. D.E. 149, ¶ 41. In any event, the conduct described relates to pre-NMS stamping practices and is thus irrelevant to alleging post-NMS practices.

[12] Mr. Kohn: So the whole point of pleading samples or examples is they have to be representative of something, but that doesn't mean you have to have a statistically valid random sample in order to either plead
  The Court: But don't you have to have some proof that it is representative of something? D.E. 199 at 27, 19-24.

[13] One way in which a qui tam plaintiff may plead a nationwide case is by pleading a "random sample of claims." *See Bledsoe*, 501 F.3d at 514. But Judge O'Sullivan never suggested that a random sample of claims was required at the pleading stage in order to obtain nationwide discovery.

15

As such, discovery was appropriately limited to the four or five claims alleged with particularity and to the other 34 claims identified in Plaintiff's SAC. Rather than imposing some new rule regarding discovery in qui tam cases, Judge O'Sullivan simply applied the settled precedent that discovery in FCA cases must be tailored to Plaintiff's particularized allegations to ensure cases with "discernable boundaries and manageable discovery limits." *Atkins*, 470 F. 3d at 1360.

In sum, Plaintiff faces a "heavy burden" in seeking to overturn Judge O'Sullivan's discovery order. *Doe*, 2017 WL 275448, *1. As this Court has observed, the question is not whether this Court "might have decided the issue differently . . . when there are two permissible views of the issue." *Preferred Care Partners*, 2008 WL 4500258, at *2 (Ungaro, J.). Rather, the magistrate judge's decision must be affirmed absent "a definite and firm conviction that a mistake has been committed," *id.*, which is a "highly deferential standard of review," *Holton*, 425 F.3d at 1350. Judge O'Sullivan did not announce a new and erroneous legal standard, but rather carefully applied existing precedents on a fact-specific basis to the allegations of the SAC and concluded that nationwide discovery was not warranted here. That decision was, at a minimum, a reasonable one on this record. Accordingly, his decision should be affirmed.

## II. Interlocutory Appeal Is Not Warranted.

Plaintiff argues in the alternative that this Court should certify the Court's discovery order for interlocutory appeal.[14] But Plaintiff fails to satisfy any of the three elements required before this Court may certify an interlocutory appeal. Instead, Plaintiff's fact-laden and case-specific argument facially demonstrates that this issue is not suitable for immediate review by the Eleventh Circuit.

The Court may certify an order for interlocutory appeal under 28 U.S.C. § 1292(b) when, among other things, the order involves a controlling question of law. *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1255 (11th Cir. 2004). The Eleventh Circuit has instructed that a "controlling question of law" is one that "the

---

[14] As an initial matter, it is unclear whether Plaintiff is requesting that this Court certify Judge O'Sullivan's Order, or rather is preemptively requesting that the Court certify its own future order affirming Judge O'Sullivan's Order. Either way, such a request is premature because there is currently no order for which this Court can certify interlocutory appeal. *See* 12 U.S.C. § 1292(b) ("When *a district judge,* in making in a civil action *an order* not otherwise appealable under this section … .") (emphases added). Without such an order, there is no basis for Plaintiff to argue that the criteria of § 1292(b) are met.

court of appeals 'can decide quickly and cleanly without having to study the record.'" *McFarlin*, 381 F.3d at 1258. Plaintiff defines the controlling question here as:

> [W]hether Rule 9(b) limits discovery by precluding 'information and belief' pleading by a non-insider who lacks access to the defendant's information of the kind that would have permitted Relator Jacobs to allege a statistically valid random sample in the SAC itself, without any discovery, in a case alleging complex and far-reaching violations of the False Claims Act like this one.

D.E. 200 at 17.

But as noted above, Judge O'Sullivan said nothing about either "non-insiders" or a "statistically valid random sample." In other words, Plaintiff seeks interlocutory review on a supposed controlling question of law that was neither announced or applied by Judge O'Sullivan. Accordingly, interlocutory review on that issue is not appropriate here.

**III.    Plaintiff's Delay in Pursuing Discovery Should Not be Rewarded By Extending Discovery Beyond the 39 Loan.**

Finally, it is important to note the injustice Plaintiff seeks to work through his discovery tactics here. In early February 2017, Defendants made clear their position that nationwide discovery was inappropriate in this action. D.E. 186-2. Yet from the filing of the SAC in early January 2017 through the beginning of April 2017, Plaintiff took no steps to compel nationwide discovery in this matter, and even declined Defendants' offer to meet and confer regarding that issue in mid-February. D.E. 186-3. Even after this Court denied Defendants' motion to dismiss on March 21st, Plaintiff waited until April 29th to serve his Amended Third Set of Interrogatories and Requests for Production seeking discovery of Defendants' FHA mortgage insurance claims nationwide. D.E. 186-7, 186-8, 186-9. While Defendants worked expeditiously to provide Plaintiff with discovery concerning the 39 loans, it was not until mid-June that Plaintiff finally sought to press with the Court the question whether the SAC entitled him to nationwide discovery. And even after Judge O'Sullivan ruled on the issue, Plaintiff waited a full two weeks to file objections.

The result of Plaintiff's delay is that now, on the eve of expert disclosures, he is asking this Court to compel the production of documentation concerning tens of thousands of FHA mortgage insurance claims comprising tens of millions of pages of documents. Plaintiff's approach thus compounds the danger against which the Eleventh Circuit warned in *Atkins*, for not only is Plaintiff demanding an extraordinary volume of discovery in hopes of extracting a settlement, but he is doing so after inexcusable delay on his part that would work to the disadvantage of Defendants

17

were nationwide discovery now ordered at this late date. Perhaps recognizing the facial unreasonableness of his position, Plaintiff claims on appeal to this Court that he would be open to some sampling methodology, *see* D.E. 200 at 10, despite having explicitly abandoned the same back in mid-April. Martens Decl., Ex. 1. This type of gamesmanship should not be rewarded.

Nationwide discovery is especially unwarranted here given that Plaintiff has been afforded fulsome discovery on the five supposed false claims alleged in the SAC – and 34 more – and has come up dry in proving *post-NMS* robo-stamping or improper MERS assignments. Not a single one of the five alleged mortgage loans (or any of the other 34 listed in the spreadsheet attached to the Complaint) involved the application of unauthorized endorsement stamps after the NMS. Not a single one. Nor, for that matter, has Plaintiff turned up any pre-NMS misconduct with regard to these 39 loans. Defendants have provided Plaintiff with the corporate resolutions authorizing every endorsement on each of the 39 promissory notes. Nevertheless, Plaintiff now contends that he is entitled to nationwide discovery with regard to 81,000 additional mortgage loans on which Defendants foreclosed subsequent to the NMS. This is the very abusive litigation tactic against which the Eleventh Circuit has said district courts must protect qui tam defendants – namely, the use of baseless suits filed without sufficient information to impose onerous discovery demands on defendants in order to extract settlements. *Atkins*, 470 F.3d at 1360.

Plaintiff was on notice in early February concerning Defendants' position with regard to the proper scope of discovery. Judge O'Sullivan's ruling demonstrates that, at a minimum, Defendants' position with regard to the proper scope of discovery was a reasonable one. Yet Plaintiff waited until mid-June to bring the issue to the Court for resolution. In these circumstances, Judge O'Sullivan's decision to deny Plaintiff's request for nationwide discovery was not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); S.D. Fla. Local Magistrate Judge Rule 4(a)(1). Accordingly, Defendants respectfully submit that his discovery ruling should be affirmed. But even were this Court to conclude that Judge O'Sullivan clearly erred, there is no just reason why Defendants should now be penalized for Plaintiff's delay. At worst, were this Court to reverse or vacate Judge O'Sullivan's ruling, Defendants respectfully request that the Court remand for Judge O'Sullivan to consider reasonable and appropriate limitations on discovery that take into account the impact of Plaintiff's dilatory tactics. *See, e.g.*, *Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at *7 (M.D. Fla. Oct. 25, 2013) (denying motion to compel discovery because request "came barely a month before the discovery deadline,

seeks to expand discovery well beyond the parameters agreed by the parties," and "is beyond what [the plaintiff] sought even at the beginning of the case"); *Pushko v. Klebener*, 2007 WL 2671263, at *2 (M.D. Fla. Sept. 7,2007) (finding a time lapse between Plaintiffs' awareness of issues and seeking of court intervention "weighs against finding that Plaintiffs proceeded with due diligence").

## CONCLUSION

Defendants respectfully request that this Court affirm the ruling of Judge O'Sullivan and deny Plaintiff's request for certification of an interlocutory appeal.

Dated: July 21, 2017

Respectfully submitted,

/s/ Christine M. Manzo
Christine M. Manzo
Florida Bar No. 0052121
cmm@lgplaw.com
LIEBLER, GONZALEZ &
PORTUONDO
44 West Flagler Street
Miami, FL. 33130
Telephone: (305) 379-0400
Fax: (305) 379-9626

Matthew T. Martens (pro hac vice)
Andrea J. Robinson (pro hac vice)
WILMER CUTLER PICKERING
HALE & DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on this 21st day of July, I electronically caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

                  /s/ Christine M. Manzo
                  Christine M. Manzo